336 October 2, 2014 No. 66

IN THE SUPREME COURT OF THE
STATE OF OREGON

Ronald DOYLE
and Benedict Miller,
*Plaintiffs-Respondents,
Petitioners on Review,*

*and*

Robert DEUEL
and Charles Steinberg,
*Plaintiffs-Respondents,
Cross-Appellants,
Petitioners on Review,*

*v.*

CITY OF MEDFORD,
an Oregon Municipal corporation;
and Michael Dyal,
City Manager of the City of Medford,
in his official capacity and as an individual,
*Defendants-Appellants,
Cross-Respondents,
Respondents on Review.*

(CC 080137L7; CA A147497; SC S061463)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 13, 2014, at the University of Oregon Law School, Eugene, Oregon.

Stephen L. Brischetto, Portland, argued the cause and filed the briefs for petitioners on review. With him on the briefs was George P. Fisher.

Robert E. Franz, Jr., Law Office of Robert E. Franz, Jr., Springfield, argued the cause and filed the brief for respondents on review.

_____

\* Appeal from Jackson County Circuit Court, Mark S. Schiveley, Judge. 256 Or App 625, 303 P3d 346 (2013).

BREWER, J.

The decision of the Court of Appeals is reversed. The case is remanded to that court for further proceedings.

Walters, J., concurred and filed an opinion, in which Baldwin, J., joined.

**BREWER, J.**

The issues presented in this case are whether ORS 243.303(2),[1] which requires local governments to make available to retired employees, "insofar as and to the extent possible," the health care insurance coverage available to current officers and employees of the local government, creates a private right of action[2] for the enforcement of that duty; or, if not, whether this court should—under its common-law authority—provide such a right of action. The Court of Appeals held that the statute did not expressly or impliedly create a private right of action, and it considered that conclusion to be dispositive of plaintiffs' claim for relief. Although we also conclude that the statute does not expressly or impliedly create a private right of action for its enforcement, that conclusion is not the end of our analysis. As explained below, where a statute imposes a legal duty, but there is no indication that the legislature intended to create

---

[1] ORS 243.303(2) provides:

"The governing body of any local government that contracts for or otherwise makes available health care insurance coverage for officers and employees of the local government *shall, insofar as and to the extent possible, make that coverage available for any retired employee* of the local government who elects within 60 days after the effective date of retirement to participate in that coverage and, at the option of the retired employee, for the spouse of the retired employee and any unmarried children under 18 years of age. The health care insurance coverage shall be made available for a retired employee until the retired employee becomes eligible for federal Medicare coverage, for the spouse of a retired employee until the spouse becomes eligible for federal Medicare coverage and for a child until the child arrives at majority, and may, but need not, be made available thereafter. The governing body may prescribe reasonable terms and conditions of eligibility and coverage, not inconsistent with this section, for making the health care insurance coverage available. The local government may pay none of the cost of making that coverage available or may agree, by collective bargaining agreement or otherwise, to pay part or all of that cost."

(Emphasis added.)

[2] By "right of action," we refer to the right to bring a civil action based on a cognizable "claim for relief." *See generally* ORCP 2 ("There shall be one form of action known as a civil action"); ORCP 18 A (describing claims for relief). A right of action, like a claim for relief, is distinguishable from a "remedy," which is relief that may be available under a particular claim within a civil action. ORCP 18 B (describing demands for relief). Although the terms "right of action," "claim for relief," and "remedy" have sometimes been used interchangeably in judicial decisions and other authorities discussed in this opinion, for the sake of clarity we have undertaken to give those terms the particular meanings set out above when we use them here.

(or not to create) a private right of action for its enforcement, courts must (if such relief is sought) determine whether the judicial creation of a common-law right of action would be consistent with the legislative provision, appropriate for promoting its policy, and needed to ensure its effectiveness.

Analyzing the duty imposed on local governments by ORS 243.303(2) under that standard, we decline to create an additional common-law right of action for its enforcement because (1) plaintiffs have failed to identify a cognizable common-law claim for relief whose creation is appropriate and necessary to effectuate the legislature's purpose, (2) a declaratory judgment and supplemental relief are adequate to enforce the statutory duty, and (3) a significant change in existing law would result from judicial creation of a tort claim permitting the recovery of noneconomic damages in the circumstances here, and there is no other need to create a common-law tort claim where, as here, a declaratory judgment and supplemental relief would fully redress plaintiffs' compensable injuries, if any. We also conclude that plaintiffs have a claim for a determination of the parties' rights and duties under the statute that is actionable under the Declaratory Judgments Act.

Accordingly, we reverse the decision of the Court of Appeals and remand to that court for a determination of the other issues that that court did not reach, including whether plaintiffs were entitled to summary judgment on the ground that the city violated ORS 243.303(2) as evaluated under ORS Chapter 28.

## I.   BACKGROUND

Plaintiffs are retirees, each of whom retired from employment with the City of Medford and attempted to elect to continue the health insurance coverage that the city had provided to them as employees. The city declined to make that coverage available to plaintiffs because, among other reasons, the city's health insurance plan that had applied to plaintiffs at the time of their retirements did not include coverage for retirees, and the city took the position that the cost of providing such coverage was prohibitive. Plaintiffs brought this action against the city and its manager, asserting, among other claims for relief, a tort-based claim that

the city was required by ORS 243.303(2) to make such coverage available to them.[3] In that claim, plaintiffs alleged:

"Due to the defendant's intentional conduct of not providing the opportunity for any plaintiff to participate in its health care insurance program upon their retirement, each plaintiff is unable to access benefits ORS 243.303(2) requires."

Although plaintiffs alleged that the city intentionally did not provide them with an opportunity to participate in its health insurance program after they retired, plaintiffs did not allege that, in failing to do so, the city had intentionally, recklessly, or negligently violated the statute.

Plaintiffs alleged economic damages

"representing the difference between health care insurance premiums each has had to pay or will have to pay, that are higher than what each would have had to pay if they were allowed to participate in the city's health care insurance program, and the difference in value of benefits between the city's program and the lesser benefits each plaintiff receives from their present health care program, if applicable, and prejudgment interest on said economic damages."

Plaintiffs also alleged noneconomic damages, in their ORS 243.303(2) claim, in the amount of

"$500,000 representing each plaintiff's mental stress, anxiety and discomfort due to their fear of losing health care insurance coverage for themselves and their dependents altogether, due to concern for their ability to pay for health care insurance they will have to find because they cannot choose to participate in the city's health insurance program, and due to concern for whether any such coverage will be adequate to their and their dependent's needs; and each plaintiff's diminished health, vitality, and life expectancy due to the difference in health care services available to each plaintiff."

---

[3] Plaintiffs also filed an action in federal district court, asserting federal claims. *Doyle v. City of Medford*, 565 F3d 536, 541-42 (9th Cir 2009) (*Doyle I*). We described that action in our answer to the Ninth Circuit Court of Appeals' certified questions regarding the meaning of ORS 243.303(2) in *Doyle v. City of Medford*, 347 Or 564, 227 P3d 683 (2010) (*Doyle II*). We discuss our decision in *Doyle II* in some detail below.

In addition, plaintiffs re-alleged a paragraph from another claim in their complaint "seek[ing] declaratory relief," and plaintiffs asked for "such additional remedies, both legal and equitable, that the law provides and the Court deems just and proper."

The city moved for partial summary judgment, arguing that ORS 243.303(2) did not require it to provide health insurance coverage to plaintiffs; alternatively, the city asserted that there is no civil remedy for a violation of ORS 243.303.

The circuit court denied the city's motion, explaining that,

> "[a]lthough the issue is not free of doubt, the court finds that upon application of the standards set forth in *Miller v. City of Portland*, 288 Or 271, 276-78, 604 P2d 1261 (1980) and *Scovill v. City of Astoria*, 324 Or 159, 165-69, 921 P2d 1312 (1996), ORS 243.303 does provide plaintiffs with a private right of action * * *. The evidence is undisputed that the statute was amended more than 20-years ago to change the language about how municipalities treat their retirees with respect to health care insurance from a permissive 'may' to the directive 'shall,' and that the change was made despite widespread objection that it would 'force' local government action. A private right of action is necessary to effectuate the legislature's intent."

The circuit court did not elaborate on the nature of the "private right of action" that it believed was necessary to effectuate the intent of the legislature in enacting ORS 243.303(2) or determine whether the city had breached a tort standard of conduct in failing to provide insurance coverage to retirees. The circuit court rejected the city's argument that, because providing insurance coverage to retirees was prohibitive in light of its cost, it had not violated the statute. The court explained that "[the city] ha[s] not presented the court with undisputed evidence that no entity providing health care insurance was (and is) willing to provide such coverage for both current and retired employees" and that, because the text of ORS 243.303(2) did not provide an exception to the statutory duty based on the cost of coverage, the court could not rely on increased cost as "indicating impossibility."

Based on the same reasoning, the circuit court subsequently granted plaintiffs' motion for partial summary judgment contending that the city violated ORS 243.303(2). The parties then tried to a jury the issue of what damages plaintiffs had suffered as a result of the city's violation of ORS 243.303(2). At the close of the evidence, the circuit court instructed the jury that

> "plaintiffs Ronald Doyle and Ben Miller allege claims for a statutory tort. To establish a statutory tort, each plaintiff must show first that the defendant violated an Oregon statute and second, that the violation of statute caused the plaintiffs damages.
>
> "In this case the court has already determined that defendant violated this statute by failing to provide plaintiffs Doyle and Miller the choice to continue group health insurance coverage.
>
> "On the claim for violation of statute, the only issue for you to decide are whether the violation of statute caused Plaintiff Doyle and Plaintiff Miller damages and if so, the amount of such damages."

The court further instructed the jury that noneconomic damages could be based on "emotional distress that the plaintiff has sustained from the time he was injured until the present and that the plaintiff probably will sustain in the future[,] *** any inconvenience and interference with the plaintiff's normal and usual activities," and "any other subjective non-monetary losses," not to exceed the amount of $500,000. The jury awarded $61,142 in economic damages and $50,000 in noneconomic damages to Doyle, and $29,866 in economic damages and $50,000 in noneconomic damages to Miller.

Plaintiffs and the city appealed the ensuing judgment.[4] Relying in part on this court's decision in *Scovill v.*

---

[4] The circuit court granted the city's motion for summary judgment on plaintiffs Deuel and Steinberg's ORS 243.303(2) claims on statute of limitations grounds. Plaintiffs cross-appealed that ruling, and the Court of Appeals, after holding that ORS 243.303(2) did not provide a private right of action for damages, rejected that cross-appeal as moot. *Doyle v. City of Medford*, 256 Or App 625, 652, 303 P3d 346 (2013). That aspect of the Court of Appeals' decision is not before us on review.

*City of Astoria*, 324 Or 159, 921 P2d 1312 (1996), the Court of Appeals reversed, concluding that the circuit court had erred in granting plaintiffs' motion for partial summary judgment; the Court of Appeals held that ORS 243.303(2) did not create a private right of action sounding in tort. The Court of Appeals reasoned, first, that "the statute itself makes no provision for a private right of action," and although such an action may be implied from the text and context of a statute, "the legislature knows how to make [such an intent] explicit," and "the absence of an express statement supports an inference that a private right of action was not contemplated." *Doyle v. City of Medford*, 256 Or App 625, 640, 303 P3d 346 (2013). Second, the court found "no textual or contextual clues from which we can infer that the legislature contemplated the possibility of a private right of action." *Id.* As the court explained, "[t]he creation of an obligation, in and of itself, is not enough to show an intention to provide injured persons with a right of action." *Id.* The court reasoned that, because the "insofar as and to the extent possible" phrase in ORS 243.303(2) rendered the obligation imposed by the statute "indefinite," the legislature "did not contemplate a private right of action." *Id.* at 641. "In the absence of some indication that a private right of action was contemplated," the court concluded, "the degree of flexibility and discretion accorded to the local government is inconsistent with an intention that the statute be enforceable through a private action for damages." *Id.* The court also stated that, because "the legislature did not contemplate that there could be liability in connection with the failure to carry out the obligation described in ORS 243.303," it would "not address the second inquiry described in *Scovill*, whether the court should accord plaintiffs a civil remedy." *Id.* at 641 n 6.

Plaintiffs petitioned for review of the Court of Appeals' decision. Pursuant to ORAP 9.20(2), this court limited its grant of review to determining whether Oregon law provides "retired public employees a civil remedy for breach of the duty to make group health insurance coverage available to retirees under ORS 243.303." We also invited the parties to discuss the application of this court's decision in *Scovill* to that statute.

On review, plaintiffs assert that ORS 243.303(2) impliedly created a private right of action sounding in tort to enforce the city's duty and that, even if it did not, the circuit court nonetheless properly concluded that judicial creation of a common-law right of action serves to enforce the duty.[5] Among other arguments, the city replies that the absence of any indication in the text of ORS 243.303(2) that the legislature intended to create such a right is dispositive, and that the Court of Appeals correctly reversed the circuit court's judgment for that reason. In the city's view, this court went astray in several previous decisions by suggesting that a court may provide a private right of action for violation of a statutory duty where the legislature has not expressly or impliedly conferred such a right.

## II.   ANALYSIS

### A.   *Statutory Liability*

Statutory liability arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty.[6] *Nearing v. Weaver*, 295 Or 702, 707, 670 P2d 137 (1983). Whether a statute does so is a question of statutory interpretation. *Scovill*, 324 Or at 166. To prevail on a statutory liability claim, a plaintiff must be within the class of persons that the legislature intended to protect, and the harm must be of the sort that the legislature intended to prevent or remedy. *Bellikka v. Green*, 306 Or 630, 634-35, 762 P2d 997 (1988). Because such a claim arises from a statutory duty that the legislature meant to be enforced, it "stands and falls with the statute under which it is asserted, and it disappears as soon as the

---

[5] Consistently with that premise, on review plaintiffs frame the issue this way:

"If permitting a tort action in the circumstances alleged in the case is consistent with and serves to enforce the legislated duty imposed by the statute, the court may accord a civil remedy to the injured party."

[6] We use the term "statutory liability" here because it is a more precise term than "statutory tort," a term used by the parties in this case and at times, by this court. *See, e.g.*, *Scovill*, 324 Or at 171 (setting out inquiry for "[r]ecognition of a statutory tort."). As this court noted in *Bellikka v. Green*, 306 Or 630, 635, 762 P2d 997 (1988), "Statutory liability is not necessarily 'tort' liability, a characterization that might affect issues such as the measure of damages or the statute of limitations[.]" We reiterate, however, that the parties have treated plaintiffs' pertinent claims in this case as sounding in tort.

statute is repealed or amended." *Bob Godfrey Pontiac, Inc. v. Roloff,* 291 Or 318, 342, 630 P2d 840 (1981) (Linde, J., concurring).[7]

The legislature sometimes has expressly imposed civil liability for the violation of a statutory duty. *See, e.g.*, ORS 607.044 ("A person shall be liable to the owner or lawful possessor of land if the person permits an animal of a class of livestock to run at large upon such land and the land is located in a livestock district in which it is unlawful for such class of livestock to be permitted to run at large."). In other circumstances, this court has considered whether legislative intent to create a private right of action for violation of a statutory duty is implied by the text, context, or legislative history of the statute creating the duty. *See, e.g.*, *Chartrand v. Coos Bay Tavern Inc.*, 298 Or 689, 696, 696 P2d 513 (1985) (by enacting ORS 30.950, the legislature "stat[ed] or impl[ied] in reverse language, that a tavern owner will be held liable for the acts of a person who has been served alcoholic liquor while visibly intoxicated."); *Nearing*, 295 Or at 710-11 (where mandatory arrest statute, ORS 133.310(3), did not expressly create a right of action, such a right was implied by the grant of immunity from civil liability to police officers under ORS 133.315 for arrests made in good faith and without malice pursuant to ORS 133.310(3)).

In determining whether the legislature impliedly intended to create a private right of action for violation of a statutory duty, this court has generally focused on two factors: (1) whether the statute refers to civil liability in some way, *Chartrand*, 298 Or at 696; *Nearing*, 295 Or at 708; and (2) whether the statute provides no express remedy, civil or otherwise, for its violation and, therefore, there would be no remedy of any sort unless the court determined that the

---

[7] Statutory liability is distinct from the tort theory of "negligence *per se*." *See Chartrand v. Coos Bay Tavern Inc.*, 298 Or 689, 695-96, 696 P2d 513 (1985) (plaintiff injured by customer served alcohol by tavern in violation of ORS 471.410(1) could proceed on theories of negligence, negligence "as a matter of law" for the tavern's violation of ORS 471.410(1), or on a "statutory tort" theory, implied by the text of ORS 30.950). Negligence *per se* is a shorthand descriptor for a judicially recognized negligence claim based on a duty that is imposed by a statute or regulation. *Abraham v. T. Henry Construction, Inc.*, 350 Or 29, 36 n 5, 249 P3d 534 (2011); *see also Shahtout v. Emco Garbage Co.*, 298 Or 598, 601, 695 P2d 897 (1985). Negligence *per se* is not at issue in this case.

legislature impliedly created one or the court itself provided one. *Chartrand*, 298 Or at 696; *Nearing*, 295 Or at 708-10.

B.  *Judicial Creation of a Common-Law Right of Action for Violation of a Statutory Duty*

If a statute that imposes a duty neither expressly nor impliedly creates a private right of action for its violation—that is, where there is no indication in the text, context, or legislative history of the statute that the legislature did (or did not) intend to create a right of action to enforce the duty—this court nevertheless has stated that, in limited circumstances, it will judicially create a common-law right of action to redress the violation.

In *Burnette v. Wahl*, 284 Or 705, 588 P2d 1105 (1978), this court acknowledged the existence of such authority but declined to provide a private right of action on behalf of children who had been abandoned by their parents arising from the parents' violation of a statute prohibiting child abandonment. The court explained:

"The establishment by courts of a civil cause of action based on a criminal or regulatory statute is not premised upon legislative intent to create such an action. It is obvious that had the legislature intended a civil action it would have provided for one, as legislatures many times do. Therefore, the underlying assumption is that it was not intended that the statute create any civil obligation or afford civil protection against the injuries which it was designed to prevent. When neither the statute nor the common law authorizes an action and the statute does not expressly deny it, the court should recognize that it is being asked to bring into existence a new type of tort liability on the basis of its own appraisal of the policy considerations involved. If a court decides to create a cause of action for the act or omission which violates the statute, the interest which is invaded derives its protection solely from the court, although the legislative action in branding the act or omission as culpable is taken into consideration by the court in deciding whether a common law action should be established. If a civil cause of action based upon a statute is established by a court, it is because the court, not the legislature, believes it is necessary and desirable to further vindicate the right or to further enforce the duty created by statute.

"Because it is plain to the legislature that it could have created the civil liability and it has not, courts must look carefully not only at the particular statute establishing the right or duty but at all statutes which might bear either directly or indirectly on the legislative purpose. If there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires. Courts have no omnipotence in the field of planning, particularly social planning of the kind involved here. Courts should exercise restraint in fields in which the legislature has attempted fairly comprehensive social regulation."

*Id.* at 711-12 (footnote omitted).

In *Burnette*, this court looked not only to the statutes that criminalized child abandonment and nonsupport and that the plaintiffs asserted accorded them a private right of action to recover emotional distress damages; it also examined statutes that comprehensively regulated assistance to children and families. *See Burnette*, 284 Or at 708-10. jAs the court elaborated:

"There is no doubt *** that the statutory provisions previously cited show a strong state policy of requiring the kind of parental nurturing, support and physical care of children which the defendants here are alleged to have denied their children. As previously indicated, it does not follow as a matter of course that it would be wise or judicious to vindicate that policy by a tort action for damages by children against their mothers. The state also has other policies within its statutory plan of which such a cause of action may well be destructive, particularly the policy of reuniting abandoned children with their parents, if possible."

*Id.* at 712.

This court conducted a similar analysis in *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980). In that case, the court declined to accord to minors who had injured themselves while intoxicated, after illegally purchasing alcohol from licensed alcohol sellers—who, in selling to the minors had violated ORS 471.130(1)—a private right

of action for the seller's violation of the statute. The court explained that

> "criminal or regulatory statutes are frequently enacted to cover situations in which no common law right of action has ever been established by courts. One of the most usual situations concerns injuries incurred by a person who has been given and has used alcohol. The statutes may have express provisions for a tort right of action. When such statutes exist, courts must, of course, comply. On the other hand, regulatory and criminal statutes most often contain no express provision for a right of action and, where courts have established no common law rights under the circumstances governed by the statutes, a different kind of problem is posed from the negligence *per se* situation. In such cases, courts attempt to determine legislative intent as to civil liability from whatever sources are available to them; and, if determinable, courts follow that intent. The most usual sources of information are the language of the statute itself including the title and preamble, as well as the legislative history. If these sources fail to disclose legislative intent, courts usually come to the conclusion that the problem was not contemplated by the legislature and that it had no specific intent. In such a state of affairs, courts must still make a decision and they then attempt to ascertain how the legislature would have dealt with the situation had it considered the problem. This is usually done by looking at the policy giving birth to the statute and determining whether a civil tort action is needed to carry out that policy. In this latter instance, if action is taken by the court establishing a cause of action, it is in furtherance of legislative purpose, but the modification of the law is judicial rather than legislative."

*Id.* at 277-78 (footnote omitted). The court referred the reader to *Restatement (Second) of Torts* § 874A (1979) for "a further and more detailed discussion of the entire subject." *Id.* at 279 n 9.

In *Miller*, this court determined the legislature's purpose by looking to two statutes: ORS 471.130(1) and ORS 471.430. The first statute proscribed the selling of liquor to minors by licensees, and the second criminalized the purchase of liquor by minors. The court in *Miller* ultimately concluded that it would be "inappropriate to use ORS 471.130(1) as a basis for civil liability by licensees to the

underage minor," because "[i]t would be inconsistent with the apparent legislative policy to reward the violator with a cause of action based upon his or her conduct which the legislature has chosen to prohibit and penalize." *Id.* at 279. The court also declined to provide a right of "action for physical injuries to minors caused by their illegal purchase of alcoholic liquor," because doing so would also be "contrary to apparent legislative policy." *Id.*

In *Bob Godfrey Pontiac, Inc.*, this court concluded that conduct allegedly violating a statute setting out ethics obligations for attorneys did not give rise to a private right of action in favor of an opposing litigant. The court found "nothing in the statute or legislative history to indicate that the legislature intended that there should be liability for violation of its provisions." 291 Or at 329. Accordingly, the court concluded, "this court must decide, on the basis of its own appraisal of the policy considerations involved, whether to bring into existence a new type of tort liability" for violations of the statute. *Id.* (internal quotation marks omitted). After reviewing its previous decisions in *Burnette* and *Miller*, this court stated that

> "it appears that although this court has stated circumstances under which it would 'create' or 'recognize' a new cause of action for damages for violation of a statute when there is no 'underlying' common law cause of action, the court has never done so to this date. Indeed, this court has said, in effect, in *Burnette*, that in a doubtful case it would not do so, but would leave the matter to the legislature."

*Bob Godfrey Pontiac, Inc.*, 291 Or at 328-29. The court ultimately "decline[d] to 'create' or 'recognize' a new private cause of action" for violation of the statute, because doing so was "not necessary to carry out the policy of the statute and would be inconsistent with long-established rules and policies." *Id.* at 332, 337. In particular, the court concluded that the bar disciplinary process set out a comprehensive scheme for the adjudication and remediation of ethical violations and that recognizing an independent private right of action sounding in tort for such violations would not advance the legislative purposes underlying the pertinent statute.

Finally, in *Cain v. Rijken*, 300 Or 706, 717 P2d 140 (1986), this court created a new private right of action for the tort of negligence based on the alleged violation of a statute that neither expressly nor impliedly created such a right. Cain was killed when his car collided with a vehicle driven by Rijken. Cain's personal representative sued Providence Medical Center for negligently failing to supervise or control Rijken. *Id.* at 708. At the time of the accident, Rijken had been conditionally released by the Psychiatric Security Review Board to a day treatment program of Providence, which provided community mental health services under ORS 161.390(3), which stated that Providence may take a person such as Rijken into custody but did not mandate such action.

No common-law right of action previously had been recognized in the circumstances presented in *Cain*. The court nevertheless created a private right of action based on a claim for relief that included the usual elements of common-law negligence. It noted:

> "In the present case, defendant's obligation to supervise Rijken's conduct for the protection of the public was imposed by sources other than the common law of negligence. *** [O]ne who violates a statute enacted for the protection of others may be civilly liable in damages for injuring the protected interest even when there is no corresponding common law basis for recovery."

*Id.* at 715-16. The court further stated that "[c]ommon law principles of reasonable care and foreseeability of harm are relevant because this case does not fall within a mandated statutory duty." *Id.* at 717.

This court later described *Chartrand*, *Nearing*, and *Cain* as having "recognized 'statutory tort' duties in contexts where no common-law duty exists but where a statute or ordinance created a special duty owed by a defendant to a plaintiff, usually arising from the status of the parties or the relationship between them." *Nelson v. Lane County*, 304 Or 97, 107-08, 743 P2d 692 (1987). Although that statement is correct, it does not capture a fundamental difference between *Chartrand* and *Nearing* on the one hand, and *Cain* on the other. In the first two cases, this court concluded

that the legislature intended to create statutory liability, whereas, in *Cain*, the legislature had established a statutory duty, but this court had provided a common-law right of action to enforce that duty. That distinction is reinforced by the principles set out in section 874A of the *Restatement (Second) of Torts*.

C.   *The Restatement Approach to Judicial Creation of a Private Right of Action for Violation of a Statutory Duty*

*Restatement* section 874A sets out principles to guide judicial determinations of whether to create a private right of action to enforce a statutory duty where there is no indication that the legislature intended to create or deny such a right of action. As noted, this court has looked to that provision for guidance in this area of the law. *See, e.g.*, *Bob Godfrey Pontiac, Inc.*, 291 Or at 329-30 (analyzing a statutory duty claim under section 874A); *Miller*, 288 Or at 279 n 9 (referring the reader to that provision); *Burnette*, 284 Or at 725-26 (Linde, J. dissenting) (referring to section 874A as indicating that sometimes "a common law court will assimilate the statutory duty into an existing principle of liability, as for instance [a] negligence action * * *, but that is not always so"). Section 874A provides:

"When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action."

In such cases, comment d to section 874A sets out the pertinent inquiry:

"If the court has reached the conclusion that the legislative body did actually have the intent either to establish a civil remedy to protect and enforce the right or to limit the relief to that expressly provided for in the legislative provision, the issue is settled, and the court is warranted in declaring that it is complying with the legislative intent. On the other hand, if the court does not reach either conclusion regarding the actual intent of the legislative body, but

recognizes instead that that body had no specific intent in fact on the issue, the question of what it should do remains before the court. It must decide this question on its own because there is no automatic answer depending entirely upon a finding of an objective fact.

"Courts often continue to speak of legislative intent in this situation, but this should be with the realization that under these circumstances they are using the expression in a figurative, rather than a literal, sense. 'Intent' has a different meaning. It is sometimes thought of as referring to how the legislative body 'would have dealt with the concrete situation' if it had had the situation before it in the away in which it is now before the court. Perhaps more frequently, the figurative search for legislative intent involves looking for the policy behind the legislative provision, attempting to perceive the purpose for which it was enacted, and then, having ascertained that policy or purpose, determining the most appropriate way to carry it out and identifying the remedy needed to accomplish that result.

"This process requires policy decisions by the court, and it should be aware of them and face them candidly. In these cases, it is the court itself that is according the civil remedy to the injured party. The action is in furtherance of the purpose of the legislation and is stimulated by it, but what is involved is judicial rather than legislative modification of the existing law. The court is not required to provide the civil remedy, yet judicial tradition gives it the authority to do this under appropriate circumstances. The court has discretion and it must be careful to exercise that discretion cautiously and soundly."[8]

Courts undertaking such an inquiry must determine the nature and dimensions of the legislative purpose

---

[8] By contrast, comment c to section 874A refers to the circumstance when the legislature expressly or impliedly intended to create a private right of action for violation of a statutory duty:

"If the court determines that the legislative body did actually intend for civil liability to be imposed or not imposed, whether the intent is explicit or implicit, then the court should treat the situation as if it had expressly so provided.

"If this was the intent of the legislative body, a study of the text of the provision, including the title and preamble, if any, will often disclose the fact. Tracing the legislative history may sometimes prove helpful. Some courts give careful attention to this course, while others decline to allow it to be considered at all."

or purposes embedded in the statutory provision at issue. *Restatement* § 874A comment i. After identifying the legislative purpose underlying the statute, the court must determine whether to create a common-law right of action for violation of the statutory duty. The court's determination in that regard is guided by a variety of legal and prudential considerations. As noted, section 874A sets out pertinent factors to be considered in comment h, which provides:

> "*Factors affecting the determination of whether the court should provide a tort remedy*. The primary test for determining whether the courts should provide a tort remedy for violation of the legislative provision is whether the remedy is consistent with the legislative provision, appropriate for promoting its policy and needed to ensure its effectiveness.

> "Among the factors to which a court may be expected to give consideration in determining whether a tort remedy is appropriate and needed are the following:

> "(1)   The nature of the legislative provision. How specific is the legislative provision in its regulation of conduct? Does it clearly let both the court and the actor know in advance what conduct is prohibited? Or is it posed in broad, general terms that will acquire specific meaning only if—and after—the court has determined to supply the tort remedy and expressed it for the benefit of the persons being affected? Criminal statutes are more likely to be utilized by a court for this purpose; generalized constitutional provisions are less likely to be utilized but may nevertheless be used if a fundamental right is involved. In the case of an administrative regulation, the court will also look with care at the text of the statute sanctioning or directing the promulgation of the regulation, to ascertain whether supplying the tort remedy will be in furtherance of the policy underlying that statute too \*\*\*.

> "(2)   The adequacy of existing remedies. Consideration is given first to the remedies provided for in the legislative provision itself. Are they sufficient to effectuate the policy of the legislation or do they require supplementation? What other remedies are available in the court's repertoire and how effective will they be? Will a declaratory judgment or the granting of an injunction prove better than the damage remedy because it is easier to administer or more effective? Do several remedies need to be available to the plaintiff

either at his election or at the determination of the court in light of the particular facts?

"(3)   The extent to which the tort action will aid or supplement or interfere with existing remedies and other means of enforcement. If application of the legislation has been placed in the hands of an administrative agency, for example, this may have been done with the intent that the agency exercise a discretionary enforcement or treat the matter from an administrative standpoint. To a certain extent this may also be true of criminal law enforcement, with the prosecutor being able to exercise considerable discretion. In the case of a tort action, on the other hand, the plaintiff is concerned only with whether it is in his own interest to bring the action, and enforcement is more rigid in one respect and perhaps more haphazard in another. Is this good or bad in regard to the particular legislation? How far are prosecutors or administrative agencies likely to prove ineffective because of understaffing or apathy? Will the tort action provide a greater deterrent and be more likely to insure compliance with the law? Is it likely to impose too heavy, or too erratic, a penalty, if the amount awarded depends upon the measure of damage suffered by the particular plaintiff rather than the measure of fault on the part of the defendant? Will the deterrent effect of the tort action apply not just to the forbidden conduct but also to participation in the general activity at all? Are the damages objectively ascertainable in terms of measurable compensation for loss or injury, or are they necessarily left to the unguided determination of a jury? Will the availability of an injunctive remedy in a civil action, as distinguished from a criminal prosecution, enable the court to exercise tighter control? Is relief in the form of compensation after the event adequate or should injunctive relief to prevent the injury be granted?

"(4)   The significance of the purpose that the legislative body is seeking to effectuate. How important is the policy behind the legislative provision? How important is the interest protected? Does it involve a fundamental right or a minor matter? Is it adequately protected by a remedy that merely attempts to prevent an interference with it, or is it of sufficient importance to require compensation when the attempt at prevention does not succeed?

"(5)   The extent of the change in tort law. How drastic is the change from established law? How near is the

factual situation before the court to an existing tort? Was the law already moving in this direction so that the step to include this factual situation in the scope of an existing tort is merely accelerated or is the change radically inconsistent with traditional law? Would the change merely eliminate a historical anomaly or would it alter the fundamental nature of the established tort? Will the elements of the enlarged tort be difficult or easy to understand and apply? *  *  *."

"(6)   The burden that the new cause of action will place on the judicial machinery. Will a heavy flow of litigation result? Will the trials be time-consuming? Are they likely to involve heavily contested fact issues? Will one or two suits, whether civil or criminal, be likely to inhibit violations of the legislation or will the factual issues vary so much that numerous cases are likely to continue? This factor, of course, does not carry weight if a fundamental right is being impaired or other remedies are not adequate to protect it; but that factor may be persuasive if the right involved is not consequential or other means of protecting it are also available. Within this factor comes the question of whether the federal courts should take it upon themselves to provide a federal action under a federal statute or treat the matter as adequately handled in the state courts by tort remedies under the common law."

The *Restatement* factors are not exclusive, but they are consistent with and, where applicable, supplement the factors that this court has considered in its previous decisions. For example, although this court did not specifically refer to it, the substance of the third factor in comment h played a significant role in its decisions not to create private rights of action in *Burnette*, *Miller*, and *Bob Godfrey Pontiac, Inc*. In each of those cases, the court stressed that such a right would interfere with the balance of policies embodied in a comprehensive statutory scheme. *Bob Godfrey Pontiac, Inc.*, 291 Or at 332, 337; *Miller*, 288 Or at 279; *Burnette*, 284 Or at 712.

D.   Scovill: *Statutory Liability or a Judicially Provided Private Right of Action?*

In *Cain*, *Bob Godfrey Pontiac, Inc.*, *Miller*, and *Burnette*, this court reached the issue of whether it should create a common-law right of action for a statutory violation

after having determined that no legislative intent to create a right of action was discernible. However, in *Scovill*, this court followed a somewhat different analytical path, which has been a subject of contention between the parties in this case and among other observers.[9] We take this opportunity to clarify the basis for our decision in that case.

In *Scovill*, the plaintiff's decedent died after she walked out of an Astoria police station and into a street, where she was struck by a passing truck. The decedent had been brought to the station by a friend because she was visibly intoxicated and disoriented. 324 Or at 165. The decedent's personal representative brought an action against the City of Astoria, alleging that the officers on duty had violated ORS 426.460(1) (1989) by allowing her to leave the station in a visibly intoxicated state. *Id.* That statute provided:

> "Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility. A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance."

This court began its analysis by framing its inquiry:

> "[A]n examination of ORS 426.460(1) and ORS 426.470 to determine whether, when read together, those statutes either (1) create a duty, the breach of which could be tortious to one harmed as a result of that breach, or (2) enacts a standard of care, violation of which would constitute negligence *per se*. Whether a statute creates a duty, or enacts a standard of care, is determined by discerning what the legislature intended."

*Scovill*, 324 Or at 166. The court emphasized that its task was "to discern the legislature's intent" and that, in carrying out that task, the court would look "at the text and

---

[9] *See* Caroline Forell, *Statutory Torts, Statutory Duty Actions, and Negligence Per Se: What's the Difference?*, 77 Or L Rev 497, 517-21 (1998) (critically analyzing *Scovill*).

context of [the] statutes * * * because they are the best evidence of the legislature's intent." *Id.* (citing *PGE v. Bureau of Labor & Indus.*, 317 Or 606, 610, 859 P2d 1143 (1993)). In interpreting ORS 426.460(1) (1989), the court treated ORS 426.470 (1989) as important context. The latter statute provided, in part:

> "No peace officer * * * shall be held criminally or civilly liable for actions pursuant to ORS 426.450 to 426.470 * * * provided the actions are in good faith, on probable cause and without malice."

Because ORS 426.460(1)—by its use of the mandatory term "shall"—required officers to take a visibly intoxicated person to a treatment facility when the other requirements of the statute were met, the court concluded that the statute imposed a statutory duty. *Scovill*, 324 Or at 168. The court found a parallel between the statutes at issue before it and the mandatory arrest statutes at issue in *Nearing* because, in the second sentence of ORS 426.460(1), the legislature declined to grant officers any discretion whether to take a visibly intoxicated person to a treatment facility; that absence of discretion established a mandatory duty on the part of the officers. *Id.* at 169; *cf. Nearing*, 295 Or at 708-10.[10] ORS 426.470 (1989) reinforced that understanding, because

> "the term 'actions' and the statutory section references to which such actions are to be 'pursuant' indicate that the provisions in ORS 426.470 concerning liability apply only when there are actions. The statute does not address *failure* to carry out the statutory duty. That is, ORS 426.470 declares that 'actions' to send a person home or to take the person to a detoxification facility, and other actions arising therefrom, are actions for which an officer 'shall [not] be held' liable, provided that those actions are in good faith, on probable cause, and without malice."

---

[10] As noted, above, in both *Nearing* and *Scovill*, this court looked to contextual statutes that provided for immunity from civil liability for acts *pursuant* to the statutes and that, in so doing, demonstrated that the legislature had contemplated civil liability for *failures* to act pursuant to the statutes. Such reasoning by negative implication frequently has been a focal point of this court's statutory liability decisions. *See, e.g.*, *Scovill*, 324 Or at 169; *Chartrand*, 298 Or at 695-96; *Nearing*, 295 Or at 708-10; *see also* Forell, 77 Or L Rev at 503 ("[I]f the statute says that no liability exists in certain situations, by negative implication the statute may intend it to exist in other situations.").

*Scovill*, 324 Or at 168 (emphasis in original). Thus, the court concluded that

> "the text and context of ORS 426.460(1) and ORS 426.470 disclose a legislative intent to impose on the police a statutory duty to act on behalf of a publicly intoxicated person who is a danger to self and further disclose that failure to act as *mandated was contemplated by the legislature to give rise to a potential liability in tort* in circumstances in which the limitations stated in ORS 426.470 do not apply."

*Id.* at 169 (emphasis added).

Having reached that conclusion, the court rejected the city's argument that, under the statutory construction methodology set out in *PGE*, "no statutory tort can arise unless this court can hold that the legislature *expressly* intended that a tort remedy would arise from breach of a duty created or imposed by statute." *Id.* (emphasis in original). To the contrary, the court reasoned, "[A]s we believe our discussion above has made clear, the legislature *did* contemplate that there could be liability in connection with the authority and duty to take the actions referred to in ORS 426.460(1) \*\*\*." *Id.* at 170 (emphasis in original). In short, because (1) the legislature had contemplated civil liability for failure to act pursuant to ORS 426.460(1) (1989); (2) the decedent was a member of the class of persons that the statute was meant to protect; (3) the officers violated their statutory duty; and (4) the decedent lost her life as a consequence, ORS 426.460(1) impliedly created a right of action to remedy the statutory violation.

At that juncture, the court might well have concluded its analysis. Instead, however, the court continued:

> "In the tort field, whether a statute that imposes a duty also gives rise to a tort claim for breach of that duty *is generally a matter for court decision*."

*Id.* at 170 (emphasis added).

The court then stated in a footnote:

> "Sometimes a statute expressly includes a statement that a civil action may be maintained for damages suffered by a violation of a statutory duty. For example, ORS 30.780 provides that those who violate criminal statutes

regulating gambling 'shall be liable in a civil suit for all damages occasioned thereby,' even though there also is a criminal penalty for the violation. Conversely, the legislature could provide expressly that there be no claim available to one damaged by the breach of a specific duty imposed by a specific statute. *The statutes at issue in this case provide no such clarification.*

"However, the law waiving sovereign immunity having been enacted four years earlier by Oregon Laws 1967, chapter 627, the legislature was aware when it enacted ORS 426.460(1) and ORS 426.470 that the government could commit a tort for which it would be legally responsible. The Oregon Tort Claims Act defines a tort, for purposes of that law, as a breach of a legal duty that is imposed by law, other than a contract, which results in injury to a specific person. But that definition also specifies that, to be tortious, the injury to person or persons is to be one 'for which the law provides a civil right of action for damages or for a protective remedy.' ORS 30.260(8). Thus, that definitional statute leaves open the question whether 'the law provides a civil right of action.' *That remains the major issue in this case.*"

*Id.* at 170-71 n 9 (emphasis added).

The court continued:

"Under what circumstances do the Oregon courts recognize that a tort claim may be predicated on a duty imposed by statute?

"One place to start a discussion of that question is with the provisions of *Restatement (Second) of Torts*, § 874A (1979), entitled 'Tort Liability for Violation of Legislative Provision,' which this court quoted with approval in [*Bob Godfrey Pontiac*, 291 Or at 330]. \*\*\*

"\* \* \* \* \*

"As comment (c) to section 874A indicates, the question of whether a tort remedy is needed to enforce a statutory duty may be affected by the fact that a specific remedy, such as a civil penalty, is provided by a statute. *The statute before us does not require giving any weight to that consideration, however, because there is no alternate remedy provided by the statute* for intoxicated persons with respect to whom there are reasonable grounds to believe that they are a danger to themselves and who, therefore, 'shall be taken' to an appropriate facility.

"*Therefore, recognition of a statutory tort is governed by the weight that a court finds reasonable to give to the protective purpose spelled out in the legislation.* Under those circumstances, *Restatement* comment (d) suggests that

"'the question of what it should do still remains before the court. It must decide this question on its own because there is no automatic answer depending entirely upon a finding of an objective fact.

"'* * * * *

"'* * * [I]t is the court itself that is according the civil remedy to the injured party. The action is in furtherance of the purpose of the legislation and is stimulated by it * * *.'

"*Permitting a tort action in the circumstances alleged in this case is consistent with and serves to enforce the legislated duty imposed by ORS 426.460(1), which does not specify other means for its enforcement.*"

*Scovill*, 324 Or at 170-72 (emphases added).

The quoted discussion reveals a tension in the court's reasoning. As noted, comment c to section 874A provides, in part, that, "if the court determines that the legislative body did actually intend for civil liability to be imposed or not imposed, whether the intent is explicit or implicit, then the court should treat the situation as if it had expressly so provided." Comment c thus recognizes that a private right of action may be created by legislative implication—just as this court concluded in *Nearing* and *Chartrand*. When the court in *Scovill* referred to comment c, however, it did not discuss the above sentence. Instead, the court understood comment c to indicate that "the question of whether a tort remedy is needed to enforce a statutory duty may be affected by the fact that a specific remedy, such as a civil penalty, is provided by a statute." *Scovill*, 324 Or at 171. Because ORS 426.460(1) did not provide an alternate remedy "for intoxicated persons with respect to whom there are reasonable grounds to believe that they are a danger to themselves and who, therefore, 'shall be taken' to an appropriate facility," the court in *Scovill* concluded that it was appropriate to turn to comment d to section 874A. *Id*.

However, nothing in comment c suggests that legislative intent to create a private right of action for enforcement of a statutory duty cannot be inferred in the absence of a provision for an "alternate remedy" in the statute. To the contrary, as discussed, this court has held that the legislature impliedly created a right of action for the violation of a statutory duty where there otherwise would no remedy of any sort for a violation of the duty. *Chartrand*, 298 Or at 696; *Nearing*, 295 Or at 708-10. Moreover, by its terms, comment d applies only where the court "does not reach either conclusion regarding the actual intent of the legislative body, but recognizes instead that that body had no specific intent in fact on the issue." Because the court in *Scovill* concluded that "the legislature *did* contemplate that there could be liability in connection with the authority and duty to take the actions referred to in ORS 426.460(1)," 324 Or at 169-70 (emphasis in original), it was inappropriate for the court to resort to the additional inquiry that comment d contemplates, and unnecessary to the result that the court reached. That said, as discussed above, this court recognized its authority to create a common-law right of action to enforce a statutory duty in several decisions preceding *Scovill*, and our conclusion that this court's erroneous reliance on such authority in *Scovill* was unnecessary to its ultimate holding, does not itself call into question the continuing validity of those earlier decisions.

E. *Does Judicial Creation of a Right of Action for Violation of a Statutory Duty Unlawfully Interfere with the Legislature's Constitutional and Statutory Authority?*

Focusing on the court's statement in *Scovill* that "recognition of a statutory tort is governed by the weight that a court finds reasonable to give to the protective purpose spelled out in the legislation," 324 Or at 171, the city argues that "[i]t should not be the court's function to determine whether a statute provides a cause of action for damages if it is 'reasonable,' rather the court should apply the law as it is written consistent with the legislative intent." In that respect, the city argues, *Scovill* and this court's other decisions holding that a court may in certain circumstances provide a private right of action to enforce a statutory duty where the legislature did not intend either to create or deny

such a right, are inconsistent with Article IV, section 1, of the Oregon Constitution,[11] and this court's statutory construction responsibilities under ORS 174.010[12] and ORS 174.020.[13] We disagree.

Although the city reads those decisions as improperly condoning judicial usurpation of legislative authority, that understanding is inconsistent with the fundamental premise of a court's exercise of its common-law authority. A right of action that a court provides under comment d is not "read into" a statute; rather, such a right is provided "because the court, not the legislature, believes it is necessary and desirable to further vindicate the right or to further enforce the duty created by the statute." *Burnette*, 284 Or at 712.[14]

So understood, such a right of action is conceptually analogous to a negligence *per se* claim to the extent that both are judicially created based on common-law principles but depend on the existence of statutory duties. *See Miller*, 288 Or at 276-77 ("If courts believe in given circumstances there

---

[11] Article IV, section 1, provides, in part:

"The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

[12] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

[13] ORS 174.020 provides:

"(1)(a) In the construction of a statute, a court shall pursue the intention of the legislature if possible.

"(b) To assist a court in its construction of a statute, a party may offer the legislative history of the statute.

"(2) When a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent.

"(3) A court may limit its consideration of legislative history to the information that the parties provide to the court. A court shall give the weight to the legislative history that the court considers to be appropriate."

[14] The city urges us, based on a series of California cases in which the appellate courts of that state declined to adopt *Restatement* section 874A, to reconsider this court's reliance on the principles set out in that provision in *Burnette*, *Bob Godfrey Pontiac, Inc.*, and *Miller*. Suffice it to say that the city's arguments do not persuade us to revisit this court's previous decisions.

should be a common law cause of action, and there also are criminal or regulatory statutes which delineate the defendant's conduct under such circumstances, courts may adopt the conduct required by the statutes as that which would be expected of a reasonably prudent person providing courts believe the statutorily required conduct to be appropriate for establishing civil liability."). Bluntly, if the city's view were correct, it is difficult to conceive how application of the doctrine of negligence *per se* likewise could avoid unlawfully impinging on the legislature's authority. However, we are aware of no authority that so holds.

Consistently with this court's previous decisions in *Cain*, *Bob Godfrey Pontiac, Inc.*, *Miller*, and *Burnette*, and with the principles set out in section 874A of the *Restatement*, we reaffirm that, in proper circumstances, even when there is no indication that the legislature intended to create such a right, judicial creation of a private right of action for violation of a statutory duty does not unlawfully interfere with the legislature's constitutional authority, nor does it violate this court's statutory construction responsibilities.

F.   *Summary of Governing Principles*

To summarize: When a party asserts a right of action to enforce a duty created by a statute, the first question is whether the statute expressly or impliedly indicates that the legislature intended to create or to deny such a right of action. That is a matter of statutory construction. If that inquiry discloses no discernible legislative intent to create or deny a right of action, the court must then decide whether creating a common-law right of action would be consistent with the statute, appropriate for promoting its policy, and needed to ensure its effectiveness. In making that determination, the court should consider, among the factors identified in *Restatement* section 874A along with any other pertinent factors, the nature of the legislative provision at issue, the adequacy of existing claims for relief and associated remedies, the extent to which a common-law right of action will aid, supplement, or interfere with existing claims and remedies and other means of enforcement, the significance of the purpose that the legislative body is seeking to effectuate, the extent of the change in existing common-law principles that

provision of a right of action would produce, and the burden that the right of action would place on the courts.

G.  *ORS 243.303(2)*

Before we apply those principles in this case, it is useful to consider this court's prior construction of the nature of the duty created by ORS 243.303(2). Again, that statute provides:

> "The governing body of any local government that contracts for or otherwise makes available health care insurance coverage for officers and employees of the local government *shall, insofar as and to the extent possible, make that coverage available for any retired employee* of the local government who elects within 60 days after the effective date of retirement to participate in that coverage and, at the option of the retired employee, for the spouse of the retired employee and any unmarried children under 18 years of age. The health care insurance coverage shall be made available for a retired employee until the retired employee becomes eligible for federal Medicare coverage, for the spouse of a retired employee until the spouse becomes eligible for federal Medicare coverage and for a child until the child arrives at majority, and may, but need not, be made available thereafter. The governing body may prescribe reasonable terms and conditions of eligibility and coverage, not inconsistent with this section, for making the health care insurance coverage available. The local government may pay none of the cost of making that coverage available or may agree, by collective bargaining agreement or otherwise, to pay part or all of that cost."

(Emphasis added.)

We have previously held that ORS 243.303(2)

> "creates an obligation for local governments to make health insurance available for retirees; however, we also conclude that the obligation is limited to making coverage available 'insofar as and to the extent possible,' and that, depending on the circumstances, the local government may be excused entirely from its obligation if it can demonstrate that it was not possible, under the statutory standard, to make coverage available."

*Doyle II*, 347 Or at 566. In reaching that conclusion, we rejected the city's argument that the statute "merely provides

authorization to make health insurance coverage available to retirees, rather than mandating that coverage." *Id.* at 570. Rather, we concluded that the term "shall" "impose[d] an obligation on local governments." *Id.* at 573. Accordingly, we rejected the city's argument that it had "complete discretion to choose whether to make health insurance available to retirees." *Id.*

We further concluded that, by using the phrase "insofar as and to the extent possible," the legislature had intended to qualify the duty created by its use of the word "shall." *Id.* In particular, by using that phrase, the legislature provided "some flexibility" to local governments in meeting the obligation imposed by ORS 243.303(2). *Id.* at 574. We rejected the plaintiff's argument that a local government could be relieved of its obligation only if providing health insurance to retirees was factually impossible, because the legislature's use of the terms "insofar as" and "to the extent possible" "emphasize[d] the concept of degree or amount, indicating that the legislature did not view the health insurance coverage obligation as one that necessarily was either 'possible' or 'not possible,'" but rather as a flexible obligation that "might be possible only to some degree or to some extent." *Id.* Our examination of the legislative history of the 1985 amendment to ORS 243.303(2) confirmed that the phrase "insofar as and to the extent possible" "was intended to create flexibility within the statute as a whole." *Id.* at 579.

In sum, this court concluded that the statute

"create[s] an obligation on local governments to make the health insurance coverage that they provide to active employees available to retired employees. *** Whether a local government has complied with ORS 243.303(2) will depend on whether it has made health insurance coverage available to retirees 'insofar as and to the extent possible,' in light of all the facts. The responsibility to demonstrate that it was not possible, under the statutory standard, to make coverage available to retirees rests with the local government, and we emphasize that the local government cannot make that showing, as the city attempts to here, by pointing solely to the fact that its chosen provider does not offer retiree health insurance coverage. Although the

statutory standard is a legal one, determining whether a local government has demonstrated that it should be excused from making health insurance coverage available to retirees will depend on the facts of each case."

*Doyle II*, 347 Or at 579.

The city renews here its argument from *Doyle II* that ORS 243.303(2) does not impose an obligation on local governments, because "the discretionary language 'to the extent possible' wipes out any mandatory duty supported by the use of the word 'shall.'" The city relies on excerpts from the legislative history of the 1981 and 1985 amendments to ORS 243.303(2) for that proposition—excerpts that the city also proffered to this court in *Doyle II*. This court in *Doyle II* rejected the city's argument that the legislature did not intend the term "shall" to have its ordinary, mandatory, meaning in ORS 243.303(2). The city advances no new support for that argument to persuade us that our decision in *Doyle II* was "seriously in error." *Farmers Ins. Co. v. Mowry*, 350 Or 686, 695, 261 P3d 1 (2011) (citing *Severy/ Wilson v. Board of Parole*, 349 Or 461, 474, 245 P3d 119 (2010)). Accordingly, we adhere to our prior construction of the statute—that is, that it imposed "an obligation on local governments to make the health insurance coverage that they provide to active employees available to retired employees" insofar as and to the extent that it is possible to do so. *Doyle II*, 347 Or at 579.

### III.   APPLICATION

We turn to the question of whether ORS 243.303(2) expressly or impliedly creates a private right of action for a local government's asserted failure to comply with the statute's command. It is undisputed that the text does not expressly do so. Accordingly, we look to the context and legislative history to determine whether the legislature nevertheless impliedly intended to create such a right of action in favor of plaintiffs. *Scovill*, 324 Or at 166.

As discussed, in previous cases in which this court has discerned an implied legislative intent to create statutory liability, references to civil liability in related statutes were important to the court's conclusion. *See, e.g.*, *Scovill*,

324 Or at 168-69 (provision of immunity from civil liability in ORS 426.470 for "acts pursuant" to ORS 426.460(1) supported conclusion that legislature intended to impose civil liability for statutory violations); *Nearing*, 295 Or at 708-10. The parties have identified no such references in statutes related to ORS 243.303, and we have found none. Nor does the legislative history of ORS 243.303(2) include any references—direct or indirect—to civil liability for a statutory violation.

Plaintiffs remonstrate that, despite the absence of any helpful evidence of legislative intent in the surrounding statutes or legislative history, "the legislature's enactment of a mandate implicitly [shows that] the legislature intended to create a civil remedy to enforce the mandate" and, further, that this court's decision in *Doyle II* "infers" that a private right of action exists to enforce ORS 243.303(2). We disagree with both arguments.

Plaintiff's first argument reduces to the proposition that the imposition of a statutory duty necessarily creates an inference that the legislature also intended to confer a private right of action to enforce that obligation. To state the proposition is to refute it; many statutory obligations are enacted without any legislative intent to confer a private right of action on a person who is harmed by a violation of the statute. As discussed above, the determination of implied legislative intent is made through the statutory construction analysis prescribed in *PGE* and *Gaines*, including consideration of statutory context and legislative history. The mere existence of a statutory duty alone does not furnish a shortcut through the analysis.[15]

---

[15] Describing the matter in terms of cross-cutting maxims of statutory construction, *Restatement* section 874A comment c makes the point this way:

"Resort is sometimes made to maxims of statutory construction. *Here, as in other instances, however, these maxims point in opposite directions and therefore prove to be inconclusive.* One maxim is *Ubi ius ibi remedium*, suggesting that if the legislature created a right it must have intended to create an adequate remedy to enforce that right. Opposed to this is the maxim *Expressio unius exclusio alterius est*, suggesting that if the legislation called for a criminal penalty the civil liability must have intentionally been omitted, or if one section calls for civil liability and another does not it must have been intended that there would be no civil liability under the second section."

(Emphasis added.)

We also reject plaintiffs' understanding of the scope of our decision in *Doyle II*. The precise issue before us here was not before the court in *Doyle II*. That case arose from a question certified to this court by the Ninth Circuit Court of Appeals. The question there was: "What amount of discretion does [ORS] 243.303 confer on local governments to determine whether or not to provide health insurance coverage to their employees after retirement?" *Doyle II*, 347 Or at 566. In answering that question, we were not called on to determine whether the legislature impliedly created a right of action to enforce the obligation that ORS 243.303(2) imposes on local governments, and plaintiffs' argument that the court nevertheless decided that issue in *Doyle II* is unpersuasive.

In short, we conclude that neither the text, context, nor legislative history of ORS 243.303 indicate that the legislature expressly or impliedly intended to create a private right of action to remedy a violation of the duty that the statute imposes on local governments. That is not the end of the inquiry, however. The question remains whether creation of the common-law right of action that plaintiffs advance would be consistent with the legislative purpose, appropriate for promoting its policy, and needed to ensure its effectiveness. *Bob Godfrey Pontiac, Inc.*, 291 Or at 330; *Restatement* § 874A comment h.

As we explained in *Doyle II*, the purpose underlying ORS 243.303(2) is to require local governments, insofar as and to the extent possible, to provide the same health insurance coverage to retirees that is made available to their officers and current employees. *Doyle II*, 347 Or at 579. The circuit court in this case concluded that "[a] private right of action is necessary to effectuate the legislature's intent." However, as discussed, the court did not elaborate on the nature of the right of action that it provided; in particular, although plaintiffs asserted a tort theory, the court did not describe the right of action that it provided in conventional tort terms. In particular, the court did not determine that, by violating the statute, the city had breached a standard of conduct sounding in tort. Nevertheless, the circuit court instructed the jury that it could award both economic

damages (consisting of amounts that plaintiffs had paid out-of-pocket for substitute health insurance coverage), as well as noneconomic damages for any "emotional distress that the plaintiff[s] ha[ve] sustained from the time [they were] injured until the present and that the plaintiff[s] probably will sustain in the future." The court further instructed the jury that, in considering noneconomic damages, it could take into account "[a]ny inconvenience and interference with the plaintiff[s'] normal and usual activities" past and future and "any other subjective non-monetary losses."

Having been so instructed, the jury awarded economic damages and noneconomic damages to both plaintiffs. The ultimate question before us is whether creation of a common-law right of action based on a claim for relief sounding in tort that includes the remedies of economic and noneconomic damages would be consistent with the purpose underlying ORS 243.303(2), appropriate for promoting its policy, and needed to ensure its effectiveness. To make that determination, we consider the factors set out in *Restatement* § 874A comment h.

A.   *The Nature of the Statutory Duty*

The first factor set out in comment h asks a question:

"Does [the statute] clearly let both the court and the actor know in advance what conduct is prohibited? Or is it posed in broad, general terms that will acquire specific meaning only if—and after—the court has determined to supply the tort remedy and expressed it for the benefit of the persons being affected?"

That question has important implications in this case.

On the one hand, the city's duty under ORS 243.303(2) is specific: The city *shall* provide health insurance to retirees on the same basis as provided to current employees. That is, the legislature's use of the word "shall" suggests that a strict liability standard of conduct might apply to a violation of the statute. On the other hand, however, the "insofar as and to the extent possible" clause modifies the statutory duty in a way that gives a local government a measure of flexibility and makes the applicable standard of conduct less certain.

As discussed, plaintiffs have not asserted that the city violated any tort standard of conduct. The issue, however, is whether that failure breached the city's statutory duty to plaintiffs.

In that statutory setting, plaintiffs' theory of liability bears close scrutiny. Although plaintiffs ask us to create a right of action that sounds in tort, they have not identified any existing tort claim that comports with their pleaded theory. For this court to create one, it would be necessary to pick among various elements that plaintiffs have not taken the trouble to identify. For example, if the proper theory is one of strict liability, plaintiffs have not explained how the statutory qualification of the city's duty comports with such a standard.[16] And, although plaintiffs alleged that the city intentionally failed to provide them with health insurance coverage, they have not asserted that, by doing so, the city intentionally breached its statutory duty. Neither have plaintiffs asserted negligence or other tort theories of relief, perhaps in recognition that those theories also do not fit the facts of this case. Whatever the reason for the omission, the statutory duty here would acquire a more specific (and, perhaps, unintended) meaning if this court were to adapt it to a tort theory that, among other elements, necessarily would include an associated mental state. Where, as here, the question is whether creation of a common-law right of action is both appropriate and necessary to effectuate the purpose of a statute, we are reluctant to supply elements of a common-law claim for relief that plaintiffs have failed to identify and whose creation could affect the nature of the statutory duty. *See, e.g.*, *Burnette*, 284 Or at 712 ("If there is any chance that invasion into the field by the court's establishment of a civil cause of action

---

[16] There is the additional concern as to what damages would be recoverable in a judicially created strict liability claim. As discussed below, at most, plaintiffs would be entitled to recover economic damages in any common-law tort claim. However, plaintiffs have not cited any authority for the proposition that a strict liability claim would support the recovery of the economic damages that they seek here. In the context of strict products liability claims, this court has held that personal injury to person or physical damage to property is required. *Brown v. Western Farmers Assoc.*, 268 Or 470, 478, 521 P2d 537 (1974); *see also* ORS 30.900 (defining "product liability civil action" as a civil action brought "for damages for personal injury, death, or property damage.").

might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires.").

B.  *The Adequacy of Existing Claims and Associated Remedies*

Plaintiffs remonstrate that, unless a tort claim is provided, there will be no effective means to enforce the city's statutory duty. We disagree. Although no right of action is provided in the statute itself, the question remains

"[w]hat other remedies are available in the court's repertoire and how effective will they be? Will a declaratory judgment or the granting of an injunction prove better than the damage remedy because it is easier to administer or more effective? Do several remedies need to be available to the plaintiff either at his election or at the determination of the court in light of the particular facts?

*Restatement* § 874A comment h. As we now explain, we conclude that an existing claim for relief and associated remedies are sufficient to effectuate the legislature's purpose in enacting ORS 243.303(2).

ORS 28.010 provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a judgment."

ORS 28.020 further provides:

"Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Finally, ORS 28.080 provides:

> "Further relief based on a declaratory judgment may be granted whenever necessary or proper. The application thereof shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment to show cause why further relief should not be granted forthwith."

To establish a justiciable controversy under those statutes based on asserted statutory rights, a plaintiff must show that his or her "rights, status, or other legal relations" are "affected by" the relevant statute. *Morgan v. Sisters School District #6*, 353 Or 189, 195-96, 301 P3d 419 (2013). That requirement implicates three related but separate considerations. *Id.* The first consideration is that there must be "some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or the validity of a law." *League of Oregon Cities v. State of Oregon*, 334 Or 645, 658, 56 P3d 892 (2002). Plaintiffs here satisfy that requirement: They are members of the class of persons to whom the duty imposed by ORS 243.303(2) is owed, and they claim injuries based on the city's asserted violation of that duty. The second consideration is that the injury must be real or probable, not hypothetical or speculative. *TVKO v. Howland*, 335 Or 527, 534, 73 P3d 905 (2003). Plaintiffs also satisfy that requirement: There is a present and actual dispute between the parties about the existence and scope of plaintiffs' rights and the city's obligations under the statute. The third and final consideration is that the court's decision must have a practical effect on the rights that the plaintiff is seeking to vindicate. *Kellas v. Dept. of Corrections*, 341 Or 471, 484-85, 145 P3d 139 (2006). Again, that requirement is satisfied. A judgment to the effect that plaintiffs are entitled to health insurance benefits under the statute would afford plaintiffs a judicial declaration of rights that, at least prospectively, would vindicate their rights under ORS 243.303(2).

Because plaintiffs satisfy the justiciability requirements for a declaratory judgment adjudicating their rights under ORS 243.303(2), they need not plead or prove what

would amount to a claim for relief apart from establishing their rights under that statute. *See, e.g.*, *Lewis v. Miller*, 197 Or 354, 358-59, 251 P2d 876 (1952) (claim for declaratory relief is legally sufficient if it alleges facts showing the existence of a justiciable controversy); *Central Or. Irr. Dist. v. Deschutes Co.*, 168 Or 493, 507, 124 P2d 518 (1942) (same); Walter H. Anderson, *Declaratory Judgments* 588-89 (1951) (to state a claim for declaratory judgment with respect to statutory rights, "the plaintiff's pleading need not state what would amount to a cause of action apart from the statute").

In addition, plaintiffs have a right to seek supplemental relief under ORS 28.080 for any cognizable damages that resulted from a violation of ORS 243.303(2), such as economic damages for the cost of obtaining substitute health insurance. *See Morgan*, 353 Or at 200 (supplemental relief under the Declaratory Judgments Act includes an assessment of damages); *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 573-74, 994 P2d 112 (1999) (same); *Lowe v. Harmon*, 167 Or 128, 136, 115 P2d 297 (1941) (same).

Finally, although it is true that the decision whether to grant declaratory relief sometimes has been described as "discretionary," courts are justified in refusing such relief only where "more effective relief can and should be obtained by another procedure and \* \* \* for that reason a declaration will not serve a useful purpose." Edwin Borchard, *Declaratory Judgments* 302-03 (2d ed 1941) (footnotes omitted; emphasis in original) (cited with approval in *Brooks v. Dierker*, 275 Or 619, 624, 552 P2d 533 (1976)). That is not the circumstance here, where the city's position is that plaintiffs have no right of action at all. In short, a claim for declaratory judgment would provide plaintiffs with both a declaration of their rights under ORS 243.303(2) and, if they prevail, the right to recover cognizable damages for past violations of the city's statutory duty.[17] Because declaratory relief would

---

[17] In concluding that declaratory relief is available to determine the statutory rights that plaintiffs seek to vindicate, we note that this is not a case in which a special statutory proceeding has been provided. *See Katzenbach v. McClung*, 379 US 294, 296, 85 S Ct 377, 13 L Ed 290 (1964) (noting that ordinarily declaratory relief should not be granted in that situation). Nor is it a case in which the legislature has given an agency primary or exclusive authority to enforce a statute or a regulation. *See Public Service Commission v. Wycoff Co.*, 344 US 237,

be effective to redress the injuries that plaintiffs assert, the adequacy of such relief disfavors the provision of an additional common-law claim for relief sounding in tort.

C.  *The Extent to Which the Action Will Aid or Supplement or Interfere With Existing Claims and Associated Remedies and Other Means of Enforcement*

Plaintiffs plausibly assert that judicial provision of an additional private right of action in this case would not interfere with any other vehicle for enforcement of the city's duty under ORS 243.303(2). In particular, enforcement of the statute is not delegated to an administrative body authorized to investigate, correct, or adjudicate claims of noncompliance. *Cf. Restatement* § 874A comment h ("If application of the legislation has been placed in the hands of an administrative agency, for example, this may have been done with the intent that the agency exercise a discretionary enforcement or treat the matter from an administrative standpoint."). Although the city suggests that enforcement of its statutory duty is better left to collective bargaining or federal law, those arguments are unconvincing. ORS 243.303(2) imposes a duty under Oregon law that its courts are, when their authority is properly invoked, equipped to vindicate. The ultimate question is what claims for relief and accompanying remedies are appropriate and needed to enforce that duty. Thus, this factor marginally favors plaintiffs, but does not furnish an answer to that ultimate question.

D.  *The Significance of the Purpose the Legislative Body is Seeking to Effectuate*

To a certain extent, as applied here, this factor begs a larger question: Whether the statutory purpose is so important, as a matter of public policy, that the legislature would have provided an additional right of action if it had considered the matter. Needless to say, the statutory duty

---

73 S Ct 236, 242, 97 L Ed 291 (1952) (explaining that declaratory relief should not be used to "pre-empt and prejudge issues that are committed for initial decision to an administrative body"). Our recognition that declaratory relief is available to determine the existence (or nonexistence) of the statutory rights that plaintiffs press here should not be understood as a general authorization to disregard the limits that inhere in other statutory schemes.

to provide health insurance benefits to retirees is important. However, as noted, that purpose is not unfettered. It is limited to an extent by the flexibility that the legislature provided to local governments based on the "insofar as and to the extent possible" phrase in the statute. On balance, it is difficult to determine—based on the "significance" factor—whether creation of an additional common-law right of action, as opposed to declaratory relief, is necessary or appropriate to effectuate the legislature's purpose.

E.   *The Extent of the Change in Law*

This factor poses the questions of "[h]ow drastic is the change from established law?" and "[h]ow near is the factual situation before the court to an existing tort?" *Restatement* § 874A comment h. In this case, the answer to that question is clear and its implications are significant. Plaintiffs ask us to create a tort right of action that provides them with emotional distress damages. However, in the absence of the infliction of physical injury, this court has permitted tort recovery for psychic injury in three situations. *Hammond v. Central Lane Communications Center*, 312 Or 17, 22-23, 816 P2d 593 (1991). The first is where the defendant *intended* to inflict severe emotional distress. *See Brewer v. Erwin*, 287 Or 435, 454-58, 600 P2d 398 (1979) (evidence sufficient to go to jury on theory that defendant engaged in abusive conduct intended to frighten or distress plaintiff); *Turman v. Central Billing Bureau*, 279 Or 443, 445-49, 568 P2d 1382 (1977) (evidence of extreme and outrageous conduct sufficient). The second is where the defendant intended to commit an injury-inflicting act with *knowledge* that it would cause severe distress, and the defendant's relationship to the plaintiff involves some responsibility aside from the tort itself. *Hall v. The May Dept. Stores Co.*, 292 Or 131, 135-37, 637 P2d 126 (1981) (evidence sufficient to support verdict for employee against employer under theory of intentional infliction of emotional distress). Finally, the third arises where the defendant's *negligent* conduct infringed on some legally protected interest of the plaintiff apart from causing the claimed psychic injury. *See Nearing*, 295 Or at 706 (1983) (recognizing that Oregon law allows recovery of damages for psychic harm when defendant's

conduct infringes some legal right of plaintiff independent of an ordinary tort claim for negligence); *McEvoy v. Helikson*, 277 Or 781, 562 P2d 540 (1977) (negligent delivery of passport, in violation of a court order, resulting in removal of plaintiff's child).

Here, as noted, plaintiffs did not allege that the city negligently violated the statute or, for that matter, that it acted with any other culpable mental state. And, importantly, plaintiffs have not alleged any physical injury that accompanied their asserted psychic injuries. Accordingly, plaintiffs have failed to satisfy any exception to the general rule that tort damages for psychic injury in the absence of physical injury are not recoverable. In that circumstance, judicial creation of a right of action based on a tort claim permitting the recovery of such damages would constitute a significant departure from current law in this state. We discern no basis for concluding that the creation of such a remedy would be appropriate or necessary to effectuate the legislative purpose underlying ORS 243.303(2); accordingly, we decline to do so.

Of course, noneconomic damages are a type of remedy, not a claim for relief. Therefore, this court *could* create a tort claim that would permit the recovery of economic damages alone if it were appropriate and necessary to do so. However, as explained, declaratory relief is adequate to redress plaintiffs' economic losses, and it also provides them with an important declaration of rights that a tort recovery would not. Accordingly, we conclude that creating a tort claim that would include economic damages alone—the only cognizable damage remedy that plaintiffs seek—also would not be necessary to effectuate the purpose of the legislature in enacting ORS 243.303(2).

F.  *The Burden That the New Claim Will Place on the Judicial Machinery*

Although the city suggests that creation of a common-law right of action to enforce ORS 243.303(2) would place a significant burden on the courts, it is not obvious why that would be so, and we decline to give weight to that factor here.

G.  *Balancing of Factors*

On balance, we conclude that the pertinent factors weigh against this court's creation of a common-law right of action sounding in tort to enforce the city's duty under ORS 243.303(2). The most significant factors, as applied here, are: (1) plaintiffs have failed to identify a cognizable common-law claim for relief whose creation is appropriate and necessary to effectuate the legislature's purpose; (2) a declaratory judgment and supplemental relief are adequate to enforce the statutory duty; and (3) a significant change in existing law would result from judicial creation of a tort claim permitting the recovery of noneconomic damages in the circumstances here, and there is no other need to create a common-law tort claim where, as here, a declaratory judgment and supplemental relief would fully redress plaintiffs' compensable injuries, if any. In contrast to those considerations, the other factors do not carry overriding weight in the balance.[18] Accordingly, we decline to create an additional common-law right of action for the violation of ORS 243.303(2).

We turn briefly to the concurrence, which has done a commendable job of advocating for the creation of a private tort right of action in these circumstances. As we see things, our most important differences of opinion involve (1) the import of the holdings in *Nearing* and *Chartrand*; and (2) the extent to which the court should be willing to fashion a new common-law right of action for violation of a statutory duty where there is no indication that the legislature itself intended to create a right of action.

First, it appears that the concurrence concludes that *Nearing* and *Chartrand* involved the creation by this court of a common-law right of action to enforce a statutory duty. In particular reference to those cases, the concurrence writes:

"Similarly, in this case, if this court were to recognize that plaintiffs have a tort claim for violation of ORS 243.303(2),

---

[18] We do not suggest that comment h sets out an exclusive list of relevant considerations for determining whether judicial creation of a private right of action is appropriate or necessary to enforce a statutory duty. However, the parties have advanced no other relevant factors in this case. Accordingly, we leave the matter for further development.

plaintiffs' claim should be viewed not as a claim for negligence, nor as a claim that the city acted 'willfully or intentionally or with some other state of mind.' Instead, plaintiffs' claim is a claim that the city violated the statute and that plaintiffs suffered damages as a result."

*Doyle v. City of Medford*, 356 Or 336, 386, __ P3d __ (2014) (Walters, J. concurring).

We do not share that understanding of *Nearing* and *Chartrand*. Rather than involving judicially-created rights of action, those cases involved implied statutory liability claims; that is, the court concluded that the legislature itself had intended to provide a remedy for a statutory violation.

The court explained it this way in *Bellikka:*

"Statutory law may be important in several ways. This court has recognized that there are instances where the legislature has, in effect, created a tort. *See, e.g.*, *Chartrand v. Coos Bay Tavern*, 298 Or 689, 696 P2d 513 (1985). Such statutory torts exist independent of any parallel common-law claim and can be pleaded independently, with or without an accompanying common-law claim. *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 689 P2d 1292 (1984); *Nearing v. Weaver*, *supra*, 295 Or at 707."

306 Or at 650. Similarly, in *Gattman v. Favro*, 306 Or 11, 15, 757 P2d 402 (1988) the court stated:

"The question in a statutory tort context (as it was in *Nearing* \*\*\*) is whether the plaintiff has 'pleaded an infringement by [the defendant] of a legal right arising independent of the ordinary tort elements of a negligence action.' *Nearing v. Weaver*, 295 Or at 707. One significant difference between a statutory tort remedy and a common-law right of action is that if a statutory tort is created, foreseeability may be immaterial or has been determined by the legislature. *See Chartrand* \*\*\*, discussed below. ('The plaintiff [on remand] could and may after proper amendments claim damages on a theory of tort law unfettered by negligence concepts of foreseeability.')"

*See also Solberg v. Johnson*, 306 Or 484, 488, 760 P2d 867 (1988) (citing *Gattman* and characterizing *Nearing*

as a "statutory tort" case) (brackets in original).[19] And, in *Shahtout v. Emco Garbage Co.*, 298 Or 598, 600-01, 695 P2d 897 (1985), the court cited *Nearing* for the proposition that:

> "A law that is designed to protect some or all persons against a particular risk of harm may expressly or impliedly give persons within the protected class a right to recover damages if noncompliance with the law results in harm of the kind the law seeks to prevent."

In *Cain*, a case where this court *did* create a common-law cause of action, the court distinguished *Nearing*:

> "Common law principles of reasonable care and foreseeability of harm are relevant because this case does not fall within a mandated statutory duty such as that described in *Nearing* \*\*\*. In *Nearing*, we held that common law concepts of negligence were irrelevant when police had a specific duty under ORS 133.310(3) to take a person who violated a court order into custody, and that violation of that duty could give rise to a civil action in tort. The statute mandated that police arrest a person if the person violated a court order. We contrasted the use of 'shall' in ORS 133.310(3) with the use of 'may' in the previous subsections, stating that 'shall' created a mandatory duty, while 'may' created only authority to act. 295 Or at 709[, 670 P2d 137]. Because ORS 161.336(6) states only that Providence *may* take a person into custody, the statute does not create a *Nearing v. Weaver* statutory tort."

300 Or at 717-18 (emphasis in original).

---

[19] As Professor Forell explained, in referring to *Chartrand*:

> "[T]he Oregon Supreme Court recognized that the legislature intended to create a tort action but did not expressly say so; therefore, this is a legislatively created statutory tort, not a court-provided statutory duty action."

Forell, 77 Or L Rev at 508. Likewise, in *Nearing*,

> "[The] court concluded that the legislature intended to create a tort action for people in Nearing's situation and that neither unreasonable conduct nor foreseeability had to be proved. So long as it is determined that the statute has been violated, liability is to be imposed. As the *Nearing* court noted: 'Here, the risk, the harm, and the potential plaintiff were all foreseen by the lawmaker.' [*Nearing*, 295 Or at 708-09]."

> "The decisions in *Nearing* and *Chartrand* indicate that, when a focused statute expressly refers to civil liability in some manner and the statute or statutory scheme provides no civil or criminal remedy, the Oregon Supreme Court will recognize that the legislature, by implication, intended to create a statutory tort action."

Forell, 77 Or L Rev at 511-12.

Which brings us to our caution about the circumstances under which the court should create a new common-law right of action for the violation of a statutory duty where there is no indication that the legislature intended to create a right of action. In such circumstances,

> "[t]he action is in furtherance of the purpose of the legislation and is stimulated by it, but what is involved is judicial rather than legislative modification of the existing law. The court is not required to provide the civil remedy, and yet judicial tradition gives it the authority to do this under appropriate circumstances. The court has discretion and it must be careful to exercise that discretion cautiously and soundly."

*Restatement* § 874A, comment d. There is good reason for such caution. This case illustrates why that is so. To begin with, plaintiffs have not identified any particular common-law tort on which they rely. The concurrence asserts that," [i]f plaintiffs could identify such a tort, they would not need to ask this court for assistance." *Doyle*, 356 Or at 390 (Walters, J. concurring). However, plaintiffs were required to plead and prove the elements of a cognizable common-law tort claim, so that a court responsible for ascertaining the legal sufficiency of their theory of recovery can make that determination. *See* ORCP 18 A (pleading that asserts a claim for relief shall contain "[a] plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition").

To the extent that the concurrence asserts that plaintiffs were not required to identify a common-law tort because the alleged violation of the terms of the statute at issue in this case, without more, constituted such a tort, we respectfully disagree. When a court decides that a violation of the terms of a statute amounts to a common-law tort and provides damages as a remedy, it is difficult to conceive of that decision as anything other than the court doing what the legislature itself could have done if it had so intended, but failed to do. For the judiciary to assume that role comes close to occupying the status of an auxiliary legislative body, which, of course, we must take care not to do. *See, e.g.,* *Burnette*, 284 Or at 712 ("Courts should exercise restraint in

fields in which the legislature has attempted fairly comprehensive social regulation.").

Instead, a court's creation of a common-law right of action to effectuate the purpose of a statute ordinarily will consist of adapting or assimilating an existing tort to the contours of the statutory duty. In that vein, the *Restatement* contemplates that a judicially-created tort right of action will have substantive elements that are drawn from conventional tort principles:

> "Whether the tort action provided by the court in furtherance of the policy of a legislative provision is to be treated as an intentional tort, as negligence or a form of strict liability, or perhaps as involving all three (as in some existing torts such as misrepresentation), depends primarily upon construction of the statute itself. It also depends upon the nature of the established tort to which it is found to be most closely analogous and which is therefore expanded to cover it."

*Restatement* § 874A, comment j.[20]

Consistently with that premise, to date, this court has not created a common-law tort right of action that merely tracked the terms of a statute. Instead, this court in *Cain* adapted an existing common-law right of action—negligence—to effectuate the statutory duty that the court identified. The court first concluded that Providence had a duty to the plaintiff's decedent that arose from the statutes governing community mental health, rather than from a general common-law duty of due care. *Cain*, 300 Or at 717. The court then turned to "common law principles of reasonable care and foreseeability of harm," because the statute at issue was a permissive one. The court gave substance to that duty of reasonable care by referring to two statutes:

> "Although Providence did not have custody over Rijken, under the statute it could take him into custody or request

---

[20] Understandably, plaintiffs did not plead that the city either negligently or intentionally violated its statutory duty. To do so would have *added* proof requirements that the legislature did not impose. Nor, as discussed, in light of the statutory condition that providing insurance coverage to retirees be "reasonably possible," have plaintiffs asserted that a strict tort liability theory of recovery comports with the terms of the statute.

that he be taken into custody if Rijken was 'a substantial danger to others because of mental disease or defect and [Rijken was] in need of immediate care, custody or treatment.' ORS 161.336(6). The statute authorized Providence to exercise control over Rijken. ORS 161.336(10) provides:

"'In determining whether a person should be committed to a state hospital, conditionally released or discharged, [PSRB] shall have as its primary concern the protection of society.'

"This duty to protect the public does not evaporate once PSRB conditionally releases a person to a community mental health provider. ORS 161.336(6), read with subsection (10), authorizes mental health providers to take patients into custody to protect members of the public, which included the plaintiff's decedent."

*Id.* at 718 (brackets in original). Having concluded that the statutes both imposed a duty and informed the standard of care, the court explained that the question then became "whether Providence reasonably should have foreseen that those acts posed a risk of the kind of harm to a person such as Cain, *i.e.*, to someone using the streets, that occurred here." *Id.* The court ultimately concluded that it could not determine, as a matter of law, that the harm Cain suffered was the reasonably foreseeable result of Providence's failure to take Rijken into custody. *Id.* at 720.

In sum, the right of action that the court created in *Cain* was grounded both in the statutes that created the duty Providence breached and in the common law of negligence. That approach is consistent with the *Restatement*, which states at section 874 A, comment f, that a judicially created common-law right of action "will ordinarily be assimilated to the most similar common law tort." Although courts can modify the elements of a common-law tort or even create a new common-law claim with its own features, *id.*, the issue is whether to do so would be consistent with the legislative provision, appropriate for promoting its policy and needed to effectuate the legislative purpose. *See Restatement* § 874 A, comment h. As we have explained above, we conclude that there is no basis or need to do so here.

## IV.  CONCLUSION

To summarize: We conclude that (1) the legislature neither expressly nor impliedly intended to create (or not to create) a private right of action for the violation of ORS 243.303(2); (2) the circuit court therefore correctly considered whether, nevertheless, it should provide a private right of action, based on the considerations described in this court's decisions in *Cain*, *Bob Godfrey Pontiac, Inc.*, *Miller*, and *Burnette*, and *Restatement* § 874A, to effectuate the legislative purpose underlying ORS 243.303(2); and (3) for the reasons explained above, judicial creation of the tort-based right of action that plaintiffs assert in this case is not appropriate for promoting the policy of the statute or needed to ensure its effectiveness. However, we also conclude that plaintiffs have a claim for a determination of the parties' rights and duties under the statute that is actionable under the Declaratory Judgments Act.

Accordingly, we reverse the decision of the Court of Appeals and remand to that court for a determination of the other issues that that court did not reach, including whether plaintiffs are entitled to summary judgment on the ground that the city violated ORS 243.303 as evaluated under ORS Chapter 28.

The decision of the Court of Appeals is reversed. The case is remanded to that court for further proceedings.

**WALTERS, J.,** concurring.

ORS 243.303(2) requires defendant to make available to its retirees, such as plaintiffs, the same health insurance coverage that it makes available to its current employees. I agree with the court that plaintiffs have a right to bring a claim for damages against defendant for its failure to fulfill that statutory duty. *Doyle v. City of Medford*, 356 Or 336, 373-74, ___ P3d ___ (2014). I disagree, however, with the court's conclusion that plaintiffs' claim should be analyzed and adjudicated as a claim under the Declaratory Judgments Act. In my view, this court instead should recognize, in accordance with its prior case law and *Restatement (Second) of Torts* § 874A comment h (1979), that plaintiffs

have a tort claim for damages and analyze and adjudicate plaintiffs' claim as such.

In analyzing and adjudicating a tort claim for damages, a court may be called on to decide the elements of the claim, the applicable defenses, and the cognizable damages. Courts have considered those questions for decades, if not eons, and have used myriad tort principles to decide them. In contrast, although the Declaratory Judgments Act provides remedies for statutory violations and permits a court that grants declaratory relief to grant supplemental relief, including monetary damages, a claim under the Declaratory Judgments Act is not a tort claim governed by tort principles. Thus, when proceeding under the Declaratory Judgments Act, a court that must decide the elements of a plaintiff's claim, the applicable defenses, and the cognizable damages does not have the guidance that tort principles provide. In this case, I do not see a good reason to conclude that plaintiffs' claim seeking monetary damages for a violation of ORS 243.303(2) must be analyzed and adjudicated under the Declaratory Judgments Act rather than as a tort claim.

One of the principal reasons that the court abjures a tort claim in this case is that it is unwilling to decide what "mental state" the tort would require. 356 Or at 370. The court ponders whether a tort claim for a violation of ORS 243.303(2) would be a claim for "strict liability" or "negligence" and whether a plaintiff would be required to prove that the defendant acted intentionally or unreasonably. *Id*. Those are important questions, but it is unclear why the court decides that they weigh against the creation of a tort. Those questions remain; the court cannot avoid them by classifying plaintiffs' claim as a claim under the Declaratory Judgments Act. A court adjudicating plaintiffs' claim under the Declaratory Judgments Act will be required to decide whether the city violated ORS 243.303(2) when it declined to make health care coverage available to plaintiffs. If resolution of that question requires an analysis of the city's mental state, then that analysis is required whether the claim sounds in tort or as a claim for declaratory judgment.

Moreover, the questions that the court raises about the elements of a claim for a violation of ORS 243.303(2),

including the requisite "mental state," are readily answered by this court's tort law jurisprudence. In cases in which the court has considered the elements of torts claims for violating statutorily imposed duties, the court has looked for instruction to the statute imposing the duty.

For example, in *Nearing v. Weaver*, 295 Or 702, 670 P2d 137 (1983), the plaintiffs alleged that the husband violated a restraining order, that the wife reported that violation to the defendant, who was a police officer, and that the defendant refused to arrest the husband in breach of a statutory requirement. *Id.* at 704-06. The court acknowledged that the plaintiffs had not alleged a violation of "an ordinary common law duty of due care to avoid predictable harm to another." *Id.* at 707. Rather, the plaintiffs had alleged the violation of "a specific duty imposed by statute for the benefit of individuals previously identified by a judicial order." *Id.* The court held that the plaintiffs' complaint was sufficient to plead "an infringement by [the] defendants of a legal right arising independently of the ordinary tort elements of a negligence action." *Id.* The court went on to explain that, although the plaintiffs had described their claim to the trial court as a claim for the negligent performance of duty, they had not used that label in their complaint, nor were they required to do so: The duty, the court explained, "arises from the statute coupled with the court order." *Id.* at 708 The plaintiffs' reference to negligence was "immaterial" to the defendants' liability, "because the result would not be different if defendants had acted, or failed to act, willfully or intentionally or with some other state of mind." *Id.* In an actionable claim for breach of a statutory duty, the plaintiff need prove only the statutory duty and its violation; the plaintiff need not prove that the defendant failed to take reasonable care or that the harm that occurred was foreseeable. *Id.* at 708-09.[1]

The court adhered to that reasoning in *Chartrand v. Coos Bay Tavern*, 298 Or 689, 696 P2d 513 (1985), when

---

[1] That does not mean, however, that such claims are claims of "strict" liability. The court explained in *Nearing* that the fact that a statute that imposes a mandatory obligation does "not mean that the obligation creates absolute liability for resulting harm." *Nearing*, 295 Or at 709. That is because various defenses may be available.

it recognized that the plaintiff could proceed on both a common-law negligence theory and on a theory that the defendant had violated a statute prohibiting service of alcoholic beverages to a visibly intoxicated patron. The court explained:

> "Thus, a plaintiff protected by such a statute need not resort to any concepts of negligence. Negligence is irrelevant. The sole question is whether the defendant engaged in acts prohibited by the statute and whether the violation of the statute resulted in injury."

*Id.* at 696; *see also Davis v. Campbell*, 327 Or 584, 592, 965 P2d 1017 (1998) (holding that the common-law standard for negligence "says nothing about whether the legislature intended that legal standard to apply to a statutory claim under the RLTA") (citation omitted); *Gattman v. Favro*, 306 Or 11, 15, 757 P2d 402 (1988) ("[I]f a statutory tort is created, foreseeability may be immaterial or has been determined by the legislature.").

Similarly, in this case, if this court were to recognize that plaintiffs have a tort claim for violation of ORS 243.303(2), then plaintiffs' claim should be viewed not as a claim for negligence, nor as a claim that the city acted "willfully or intentionally or with some other state of mind." Instead, plaintiffs' claim is a claim that the city violated the statute and that plaintiffs suffered damages as a result. Because plaintiffs pleaded those necessary facts, their pleading is sufficient.

The court takes a different view and discounts *Nearing* and *Chartrand*, because, in those cases, the court did not create a tort claim. Instead, the court implied a legislative intent to create tort claims from the terms of the applicable statutes. [2] But whether a court creates or implies

---

[2] The court emphasizes that, in *Nearing*, the claim that the court recognized was implied from the statute's text and context. 356 Or at 378-79. However, *Nearing* includes no discussion of whether the legislature intended to create a statutory claim. Instead, the court explained its result by stating that it had, in the past, recognized "'*common law liability* for psychic injury alone when defendant's conduct *** infringed some legally protected interest apart from causing the claimed distress, even when only negligently.'" *Nearing*, 295 Or at 706 (emphasis added; quoting *Norwest, By & Through Crain v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 558-59, 652 P2d 318 (1982)). The court then decided that similar liability should be extended in the case at hand because the legislature had imposed "a specific duty" for the benefit of a class of individuals that includes

a tort claim does not determine the elements of such claim. Whether the legislature or the court is the source of the tort remedy, it is the statute, and the legislature that enacts it, that imposes the applicable duty. And it is that duty that a court looks to in defining the elements of the tort claim. Whether the legislature or the court creates or recognizes a tort remedy, the statutory obligation is the same and there is no reason that the elements of the claim should depend on the source of the remedy.[3] Said another way, if this court had implied from the terms of ORS 243.303(2) a legislative intent to permit a tort claim for damages, the court would have had no difficulty defining the elements of such a claim. It would have required plaintiffs to allege and prove that "defendant engaged in acts prohibited by the statute" and that they suffered injury as a result.[4] The result should be

---

plaintiffs. 295 Or at 707. What is important to me is not whether this court is correct in describing the source of the claim that the court recognized in *Nearing*, but how the court in *Nearing* determined the elements of that claim—by looking to the statute that imposed the duty. Similarly, in *Scovill By & Through Hubbard v. City of Astoria*, 324 Or 159, 921 P2d 1312 (1996), the source of the tort claim was immaterial in deciding the elements of the claim. The court concluded both that the legislature intended a tort remedy and that the court would create one; the source of the claim did not determine its elements. *Id.* at 166-67.

[3] When the legislature creates a statutory duty without expressly providing a remedy, a court nevertheless may allow a tort claim by (1) implying a claim from the statute's text, context, and legislative history or (2) concluding that a claim is necessary, appropriate, and consistent with the statute. The two means of arriving at the end are not so different. When a court creates a tort claim, it does judicially what it thinks the legislature would have done had it considered the issue. Thus, similar factors are at play when a court decides whether to imply legislative intent to create a tort remedy or whether to recognize a tort remedy judicially. One court may take the analysis as indicating an implied legislative intent to create a tort remedy; another may take it as indicating grounds for judicial recognition of a tort remedy. It is intellectually satisfying to accurately describe the path that the court takes to the tort remedy, but we should not let boxes and labels do too much of the work of the court.

When the legislature imposes a specific duty for the benefit of a specific class of persons that includes the plaintiffs, and the applicable factors indicate that a tort claim is appropriate, necessary, and consistent with the statute, we conclude that we should be no more loath to create a remedy for a violation of the statute than we are when we imply a legislative intent to create a remedy. In both instances, the legislature has failed to expressly create a remedy. In both instances, the court appropriately is attempting to determine the intent of the legislature and to effectuate the legislature's policy choices; the court is not creating its own policy from whole cloth.

[4] In this case, those are, in fact, the elements that plaintiffs pleaded. The court is wrong to take plaintiffs to task for not having "taken the trouble" to identify the elements of their claim. 356 Or at 370.

no different if the court instead determined that a tort claim for damages would be "consistent with the statute, appropriate for promoting its policy and needed to ensure its effectiveness."[5] *Restatement* at § 874A comment h.

　　　*Scovill* is illustrative. In *Scovill*, the court stated two different rationales for its conclusion that the plaintiff had a tort remedy for violation of ORS 426.460(1) (1989): that the legislature intended that remedy and that the court would recognize that remedy. *Scovill*, 324 Or at 169-73. Under either rationale, however, the elements of the plaintiff's claim were the same: that defendant violated the statute by allowing the decedent to leave the police station and that the decedent was injured as a result. *Id.* at 166-67. It is the statutory duty that determines the elements of the tort claim, not whether the legislature intended or the court created the remedy.

　　　In determining whether to recognize a tort claim for damages in this case, the court should have considered whether such a claim would be consistent with ORS 243.303(2), appropriate for promoting its policy, and needed to ensure its effectiveness. *Restatement* at § 874A comment h. The court should not have become distracted by a need to label the claim or determine its elements, including its requisite "mental state." The latter issues are, at this stage, easily resolved by focusing on the statute at issue and the duty it imposes.

A.　*Consideration of the* Restatement *Factors*

　　　When correctly applied, the six nonexclusive *Restatement* factors designed to assist courts in considering whether to recognize a tort remedy for violation of ORS

---

[5] The result was different in *Cain v. Rijken*, 300 Or 706, 717 P2d 140 (1986), because the statute at issue did not impose a specific obligation. Instead, the court interpreted the statute to impose a duty to "act reasonably in treating and controlling conditionally released patients." *Id.* at 721. Because the statute incorporated a negligence standard of care and not a more specific, mandated duty, the court explained that negligence principles of reasonable care and foreseeability of harm were relevant. *Id.* at 715-16. Contrary to the court's assertion, 356 Or at 381-82, *Cain* does not represent the only circumstance in which a court may create a tort remedy for the violation of a statutory duty.

243.303(2) weigh in favor of judicial recognition.[6] I will discuss each in order.

1.  *Nature of the Statutory Duty*

The first *Restatement* factor is the nature of the statutory duty:

> "Does [the statute] clearly let both the court and the actor know in advance what conduct is prohibited? Or is it posed in broad, general terms that will acquire specific meaning only if—and after—the court has determined to supply the tort remedy and expressed it for the benefit of the persons being affected?"

*Restatement* at § 874A comment h(1). This factor asks whether the statute at issue sufficiently notifies the court and potential defendants of the risk of liability.

In this case, the court recognizes that "the city's duty under ORS 243.303(2) is specific: The city *shall* provide health insurance to retirees on the same basis as provided to current employees." 356 Or at 369 (emphasis in original). The court then notes that the statute qualifies that specific and mandatory duty with the phrase "insofar as and to the extent possible" and that that qualification makes the "standard of conduct less certain." *Id.* But whether a statutory standard of conduct is "less certain" than it theoretically could be does not address whether the statutory duty is sufficiently certain to satisfy the first *Restatement* factor. The court does not engage in that analysis. Instead, the court questions whether plaintiffs' claim comports with "any existing tort claim." *Id.* at 370. Because plaintiffs do not label the tort claim that they seek to bring except as a "violation of ORS 243.303," the court expresses concern about the elements of the claim that the court would recognize and the "mental state" that it would "supply." *Id.* (citing *Burnette v.*

---

[6] Those factors are (1) the nature of the legislative provision; (2) the adequacy of existing remedies; (3) the extent to which the tort action will aid or supplement or interfere with existing remedies and other means of enforcement; (4) the significance of the purpose that the legislative body is seeking to effectuate; (5) the extent of the change in tort law; (6) the burden that the new cause of action will place on the judicial machinery. *Restatement* at § 874A comment h.

*Wahl*, 284 Or 705, 711-12, 588 P2d 1105 (1978)).[7] Based on that analysis, the majority finds that the first *Restatement* factor weighs against the creation of a tort.

The court's analysis is off-base in two different directions. First, the court incorrectly assumes that it can recognize only common-law tort claims that comport with existing torts. Second, the court does not address the question actually posed by the first *Restatement* factor—whether the statutory duty at issue is sufficiently specific to be enforceable in a private right of action.

As to the first bar that the court raises, it should not be at all surprising that plaintiffs "have not identified any existing tort that comports with their pleaded theory." *Id*. If plaintiffs could identify such a tort, they would not need to ask this court for assistance. In each instance in which a plaintiff asks this court to recognize or create a private right of action for damages based on the breach of a statutory duty, it is the statute that the plaintiff seeks to enforce that establishes the nature of that duty and the elements of the plaintiff's claim. Thus, this court has held, "[O]ne who violates a statute enacted for protection of others may be civilly liable in damages for injuring the protected interest even when there is no corresponding common law basis of recovery." *Cain v. Rijken*, 300 Or 706, 715-16, 717 P2d 140 (1986).

In this case, plaintiffs, like the plaintiffs in *Nearing* and *Chartrand*, pleaded that defendant violated an Oregon statute and that plaintiffs suffered damages as a result. The fact that plaintiffs did not reference or incorporate additional elements of existing torts does not mean that the statute at issue is insufficiently clear to permit a tort remedy. The correct question for analysis is whether the duty imposed by

---

[7] The court's citation to *Burnette* for the proposition that "we are reluctant to supply elements of a common-law claim for relief that plaintiffs have failed to identify" is incorrect. In *Burnette*, the court considered the *Restatement* factors but did not address the need to plead the elements of an existing tort or the nature of the statutory duty. *Burnette*, 284 Or at 725-26. Instead, the court discussed a separate *Restatement* factor: the extent to which the action will aid or supplement or interfere with existing claims and associated remedies and other means of enforcement. *Restatement* at § 874A comment h(3). In this case, the court concludes that that factor weighs in favor of plaintiffs. 356 Or at 374.

ORS 243.303(2) is sufficiently specific that a tort claim is an appropriate means of enforcement.

The court's second error is in its consideration of that question. The statutory duty at issue is the duty to provide health insurance to retirees on the same basis as provided to current employees. ORS 243.303(2). That duty is subject to an affirmative defense—"that it was not possible, under the statutory standard, to make coverage available to retirees." *Doyle v. City of Medford*, 347 Or 564, 579, 227 P3d 683 (2010). The court does not take the position that that defense makes the statutory duty so general that it does not give rise to an action for damages. In fact, the court acknowledges that that duty is actionable under the Declaratory Judgments Act, and correctly so.

In other cases, this court has considered statutory duties that are more general than the duty imposed by ORS 243.303(2) and statutory duties that are subject to affirmative defenses and has concluded that those duties permit tort remedies. For instance, in *Cain*, the court considered a statutory duty to "act reasonably in treating and controlling conditionally released patients," 300 Or at 721, and the statutory duty at issue in *Nearing* is subject to affirmative defenses, 295 Or at 709. In both cases, the court held that the legislatively created duties gave rise to tort claims.

In *Nearing*, a police officer had a statutory obligation to arrest a person if the officer had probable cause to believe that the person had violated a restraining order. 295 Or at 710. Thus, whether the officer had an obligation to act depended on the officer's determination of "probable cause." *Id*. Nevertheless, the court held that relevant statutes "identify with precision when, to whom, and under what circumstances" the police must arrest a person. *Id*. at 712. Further, the court noted that there could be various defenses to a plaintiff's claim that an officer had violated those statutes and that an officer "would not be liable, for instance, for failing to make an unconstitutional arrest." *Id*. at 709. However, the court went on to explain, the fact that a defense could be asserted did not preclude a civil action to enforce the statutory duty. *Id*.

Just as the availability of an affirmative defense did not preclude a tort claim for damages in *Nearing*, the availability of an affirmative defense should not preclude a similar claim here. It was the legislature that imposed the statutory duty in both cases. And if the legislature deemed the duty at issue in *Nearing* sufficiently certain to give rise to tort liability, I do not see why this court should hesitate to do likewise when it considers the clarity of the duty imposed by ORS 243.303(2).

I also wonder how that statutory duty can be sufficiently certain to give rise to a remedy for monetary damages under the Declaratory Judgments Act, but not sufficiently certain to permit the same tort remedy. Perhaps the court gleans from the Declaratory Judgments Act a legislative intent to permit an award of monetary damages for violation of ORS 243.303(2) regardless of that statute's specificity or lack of clarity. However, if the court's decision rests on its recognition of legislative intent, then the court should not hesitate to give effect to that intent by recognizing a damages remedy in tort.

By requiring local governments to make available to retirees the same health insurance benefits that they make available to current employees, ORS 243.303(2) specifically advises the court and potential defendants what conduct is required. The first *Restatement* factor weighs in favor of recognizing a tort remedy for violation of that statutory duty.

2. *Adequacy of Existing Remedies*

The second factor identified in *Restatement* § 874A is:

> "What other remedies are available in the court's repertoire and how effective will they be? Will a declaratory judgment or the granting of an injunction prove better than the damage remedy because it is easier to administer or more effective?"

*Restatement* at § 874A comment h(2).

The court concludes that, "[b]ecause declaratory relief would be effective to redress the injuries that plaintiffs assert (including the right to damages for past statutory violations), the adequacy of such relief disfavors the provision

of an additional common law claim for relief sounding in tort." 356 Or at 373-74. That does not answer the question that the *Restatement* poses. The *Restatement* asks whether declaratory judgment or injunctive relief will prove *better* than a *damages* remedy, indicating that the drafters of the *Restatement* considered an action for a declaratory judgment to be a claim seeking only a declaration of the rights or duties of the parties and not a claim for monetary relief. If the *Restatement*'s reference to "declaratory judgment" were intended to include a judgment for monetary damages, then the question would not make sense. It would ask, in effect, whether a damages remedy would "prove better" than a damages remedy.

In this case, if the second *Restatement* factor is understood as asking whether a declaration of rights or duties would better effectuate the purpose of ORS 243.303(2) than a damages remedy, the answer to the question is an obvious no. Declaratory or injunctive relief would not be sufficient to effectuate the policy behind that statute—to protect local government retirees from the cost of independently obtaining health insurance. The pecuniary nature of the interest protected by the statute suggests that a damages remedy is appropriate. The court appears to agree, but concludes that the second *Restatement* factor weighs against plaintiffs, based on its view that plaintiffs can recover their costs by means of a claim under the Declaratory Judgments Act. That is not, however, the analysis that the *Restatement* contemplates, and it is not a convincing reason to refuse to recognize the existence of a common-law tort claim.[8]

To the contrary, judicial recognition of a tort claim provides a better vehicle for a claim for money damages than does the Declaratory Judgments Act. A court may use familiar concepts to determine the elements of a tort claim, the available defenses, and the cognizable damages, among other issues. A court will confront those same issues in considering a claim under the Declaratory Judgments Act but

---

[8] If the availability of damages under the Declaratory Judgments Act were a basis for denying judicial recognition of a common-law claim, one would think that this court would have discussed that act when previously considering the issue.

will not have the benefit of developed tort law in considering them.

That is, of course, unless the court intends to use tort principles to decide issues raised under the Declaratory Judgments Act. That that may, in fact, be the court's intent is apparent from the court's analysis of the recoverable damages in this case. The Declaratory Judgments Act permits a court to award supplemental relief "whenever necessary or proper." ORS 28.080. The court notes, correctly, that such supplemental relief may include "cognizable damages," 356 Or at 373, and that those "cognizable damages" include "economic damages for the cost of obtaining substitute health insurance," *id.* Although the court does not state the basis for that conclusion in that part of its opinion, the court later addresses the damages that plaintiffs could recover if the court were to recognize their claims as a tort claim. *Id.* at 375-76. There, the court explains that permitting plaintiffs to recover damages for their psychic injuries would require an extension of current tort law. *Id.* at 376. If the court means to imply that the damages that plaintiffs may recover under the Declaratory Judgments Act are defined by reference to tort law and similarly intends to look to tort law for the answers to other questions necessary to adjudicate plaintiffs' claims, I fail to see why a remedy under the Declaratory Judgments Act proves better than a tort remedy. Refusing to call plaintiffs' claim a tort but expecting courts to incorporate tort principles introduces unnecessary confusion.

3.  *Other Means of Enforcement*

I agree with the court's conclusion that judicial recognition of a tort claim for damages would not interfere with any other vehicle for enforcement of the city's duty under ORS 243.303(2). 356 Or at 374. I also agree that that third *Restatement* factor favors plaintiffs. *Id.*

4.  *The Significance of the Purpose the Legislature Seeks to Effectuate*

I agree with the court's conclusion that a local government's statutory duty to provide health care benefits to retirees on the same basis that it provides those benefits

to current employees is important. *Id.* at 374-75. When it amended ORS 243.303(2), the legislature deliberately made that duty mandatory rather than permissive. Although the legislature also permitted local governments to demonstrate impossibility of compliance as an affirmative defense, that defense does not make the duty it imposed any less important. The fourth *Restatement* factor favors plaintiffs.

###### 5. *Extent of Change in Law*

The fifth *Restatement* factor poses the following two questions:

> "How drastic is the change from established law? How near is the factual situation before the court to an existing tort?"

*Restatement* at § 874A comment h(5). When assessing that factor, the court changes the questions and undertakes an analysis of whether allowing plaintiffs to recover noneconomic damages would require a change in existing law. 356 Or at 375-76. The fifth *Restatement* factor focuses on the nature of the *claim* that the court is asked to recognize, not on the extent of the *damages* that the plaintiff may be entitled to recover. The court recognizes as much when it states that, "[o]f course, noneconomic damages are a type of remedy, not a claim for relief. Therefore, this court *could* create a tort claim that would permit the recovery of economic damages alone if it were appropriate and necessary to do so." *Id.* at 376 (emphasis in original).[9]

Thus, when properly understood, the fifth *Restatement* factor also weighs in favor of plaintiffs. As explained at the outset, this court has recognized tort claims for the breach of specific statutory duties and, as the court concludes, permits a claim for violation of such duties under the Declaratory Judgments Act. If this court were to recognize a tort claim for breach of the duty established by ORS 243.303(2), the change in the law would not be drastic.

---

[9] At footnote 16, the court expresses a concern that economic damages may not be available for a strict liability claim, arguing that, for strict products liability claims, personal injury or property damage is required. *Id.* at 370 n 16. A claim for violation of ORS 243.303(2) is not a strict products liability claim, nor is it a claim for a violation of a common-law duty of reasonable care. A claim for violation of ORS 243.303(2) is a common-law claim for a violation of a specific statutory duty.

There could be an issue, if appropriately and timely raised, of the type of damages available for such a claim. However, the fact that plaintiffs prayed for damages that may have been subject to a motion to strike is not a basis for deciding that plaintiffs have no tort remedy for a violation of ORS 243.303(2).

6. *The Burden that the New Claim Will Place on the Judiciary*

I agree with the court that the judicial recognition of a tort action would not place a burden on the courts that should weigh against plaintiffs in this case. 356 Or at 376.

B. *Determining Whether to Recognize a Damages Remedy*

When correctly analyzed, all of the *Restatement* factors weigh in favor of judicial recognition of a tort remedy for damages: Such a tort claim for damages is consistent with the statute, appropriate for promoting its policy, and needed to ensure its effectiveness. Although I agree with the court that plaintiffs are entitled to seek damages for a violation of ORS 243.303(2), I would embrace tort principles to reach that conclusion and to decide the other issues that such a claim may present.

Baldwin, J., joins in this concurring opinion.